[No. 57176–7.   En Banc.   January 10, 1991.]

CHRYSLER MOTORS CORPORATION, *Appellant,* v. MARIA FLOWERS, ET AL, *Respondents.*

*Betts, Patterson & Mines, P.S.,* by *Carl H. Hagens* and *Mark M. Miller* (*Allan M. Huss,* of counsel), for appellant.

*Armstrong, Alsdorf, Bradbury & Maier, P.C., Peter L. Maier,* and *Katherine See Kennedy,* for respondent Flowers.

*Kenneth O. Eikenberry, Attorney General,* and *Lynn D. Hendrickson* and *Douglas D. Walsh, Assistants,* for respondent State.

ANDERSEN, J.—

FACTS OF CASE

At issue here is whether Washington's lemon law (RCW 19.118) is applicable to automobiles such as the one sold to the purchaser in this case.

In November 1986, Chrysler Motors transferred a new 1987 Dodge Ramcharger 4 x 4, hereafter referred to as the automobile, to Chrysler's Denver, Colorado, zone office. The Denver zone office intended to use the automobile as a

"field" vehicle, or a vehicle assigned to an employee for business and personal use. In December 1986 the Denver office assigned the automobile to a Chrysler employee who used it for 7 months, driving it more than 20,000 miles. The automobile was never titled in Colorado.

Chrysler took the automobile out of service as a field vehicle in July 1987, then in August consigned it to the South Seattle Auto Auction at Kent, Washington. The auction sold the automobile in September 1987 to Armand Moceri's Puyallup Chrysler/Plymouth, Inc.

On September 22, 1987, Maria Flowers, hereafter referred to as the purchaser, bought the automobile from Puyallup Chrysler/Plymouth. At the time of her purchase, the odometer on the automobile read 23,410 miles. Chrysler issued a manufacturer's warranty that covered the first 24,000 miles of operation.

Within a few days of the automobile's purchase, problems surfaced and the purchaser returned it to the dealer for repairs. The odometer read less than 24,000 miles at the time. The allegedly defective items included power steering, transfer case, drive train, transmission, windshield, right turn signal and brakes, and excessive oil usage. The purchaser brought the automobile in for repairs at least 8 times, and it was out of service for 35 days.

The automobile was never satisfactorily repaired, and on July 11, 1988, the purchaser submitted a request for arbitration under Washington's lemon law, RCW 19.118. After a hearing on August 18, 1988, the new motor vehicle arbitration board ordered Chrysler to repurchase the automobile, minus a statutorily set offset for mileage.

Chrysler appealed to the King County Superior Court and filed a motion for declaratory judgment seeking a declaration that the automobile was a used vehicle not subject to RCW 19.118 and that Chrysler was entitled to a summary judgment dismissing the purchaser's claims. The

purchaser filed a cross motion for summary judgment seeking to enforce the arbitration board's decision. The State of Washington Attorney General intervened in the case and supported the purchaser's motion.

The superior court judge heard oral argument and granted summary judgment to the purchaser. The court ordered Chrysler to repurchase the automobile, as had previously been ordered by the arbitration board, and also awarded attorneys' fees and costs to the purchaser pursuant to RCW 19.118.100. Chrysler appealed the summary judgment order to the Court of Appeals. The Court of Appeals certified the case to this court.[1]

One issue is presented.

## ISSUE

Does an automobile which has been driven extensively as a manufacturer's field vehicle qualify as a "new motor vehicle" as defined by Washington's lemon law?

## DECISION

CONCLUSION. The automobile in question does qualify as a "new motor vehicle" because it was a "demonstrator" (as we construe that word), was not titled before the purchaser bought it under manufacturer's warranty, and because the purchaser bought it within the statutory warranty period established by the lemon law.

The basic purpose of lemon law legislation in this country is to permit buyers of faulty automobiles to rid themselves of same after a reasonable number of attempts at repair.[2] Washington's lemon law statute addresses this purpose:

> The legislature recognizes that a new motor vehicle is a major consumer purchase and that a defective motor vehicle is likely to create hardship for, or may cause injury to, the consumer. The legislature further recognizes that good cooperation

---

[1]RCW 2.06.030.

[2]Dahringer & Johnson, *Lemon Laws: Intent, Experience and a Pro-Consumer Model,* 22 J. Consumer Aff. 158, 160 (Summer 1988).

and communication between a manufacturer and a new motor vehicle dealer will considerably increase the likelihood that a new motor vehicle will be repaired within a reasonable number of attempts.

RCW 19.118.005 (part). If such repair attempts fail, Washington's lemon law creates a state funded and operated mandatory arbitration board to hear and resolve disputes between manufacturers and dissatisfied consumers.[3] The law provides relief from an unsafe or defective vehicle limited to replacement or repurchase of the vehicle.[4]

In enacting these measures, our Legislature has made clear its intent to create the blend of private and public remedies necessary to induce manufacturers to improve quality control or to provide better warranty service for new motor vehicles sold in Washington.[5] Accordingly, Washington's lemon law applies only to new motor vehicles. At the time the trial court entered its summary judgment order in this case, the lemon law defined "new motor vehicle" as follows:

"New motor vehicle" means any new self–propelled vehicle primarily designed for the transportation of persons or property over the public highways that was leased or purchased in this state and registered in this state, but does not include vehicles purchased or leased by a business as part of a fleet of ten or more vehicles. If the motor vehicle is a motor home, this chapter shall apply to the self–propelled vehicle and chassis, but does not include those portions of the vehicle designated, used, or maintained primarily as a mobile dwelling, office, or commercial space. The term "new motor vehicle" does not include motorcycles or trucks with nineteen thousand pounds or more gross vehicle weight rating. *The term "new motor vehicle" includes a demonstrator or lease–purchase vehicle as*

---

[3] RCW 19.118.080.

[4] RCW 19.118.041(1).

[5] RCW 19.118.005 (part); *see also Ford Motor Co. v. Barrett,* 115 Wn.2d 556, 565, 800 P.2d 367 (1990).

*long as a manufacturer's warranty was issued as a condition of sale.*

(Italics ours.) RCW 19.118.021(8).[6]

█ As the concluding sentence of this statutory definition makes clear, a demonstrator is considered a new motor vehicle as long as a manufacturer's warranty was issued as a condition of sale. Unfortunately, the lemon law does not further define "demonstrator" or "new". Other statutory definitions set forth in the lemon law statute are helpful, however, in understanding the meaning of the term "new motor vehicle". The lemon law defines a consumer as anyone who enters into an agreement for the transfer, lease or purchase of a new motor vehicle, other than for resale or sublease, during the duration of the warranty period.[7] That warranty period is defined as the period ending 2 years after the date of a new motor vehicle's delivery to a consumer, or the first 24,000 miles of operation, whichever occurs first.[8] It is necessary to bear these definitions in mind in defining a new motor vehicle, since every provision of an act must be harmonized where possible.[9]

Chrysler challenges the trial court's conclusion that the purchaser's automobile was a "new motor vehicle" under RCW 19.118.021(8), quoted above. It challenges both the automobile's status as "new" and as a "demonstrator", relying on the principle that undefined statutory terms should be given their ordinary meanings.[10]

---

[6]The definition of "new motor vehicle" was revised by the Legislature effective June 1, 1989. The revisions are not pertinent herein and do not affect the resolution of this case.

[7]RCW 19.118.021(4).

[8]RCW 19.118.021(18).

[9]*State v. Neher,* 112 Wn.2d 347, 352, 771 P.2d 330 (1989); *State v. S.P.,* 110 Wn.2d 886, 890, 756 P.2d 1315 (1988).

[10]*Garrison v. State Nursing Bd.,* 87 Wn.2d 195, 196, 550 P.2d 7 (1976); *Hyde v. Wellpinit Sch. Dist. 49,* 32 Wn. App. 465, 467, 648 P.2d 892 (1982).

The purchaser acknowledges that while a car with accrued mileage of 23,000 miles may at first blush not seem new, remedial legislation such as the lemon law should be construed broadly.[11] It is the purchaser's position that the automobile was new when she bought it because it was a demonstrator and had never been previously titled or registered, and because she bought it within both the manufacturer's warranty period and the statutory lemon law warranty period.

There is recent case law that lends support to the purchaser's position. The Wyoming Supreme Court resolved a lemon law lawsuit by holding that a car covered by a new car warranty is a new car despite previous ownership and mileage in *Britton v. Bill Anselmi Pontiac–Buick–GMC, Inc.*, 786 P.2d 855, 865 (Wyo. 1990). The 1983 Buick there at issue had been previously used as a company car by General Motors executives and had more than 6,000 miles on it when purchased by the consumer in 1984. The *Britton* court declined to apply the trial court's conclusion that a new vehicle is one which has had no prior owner and has only negligible mileage.[12] The Wyoming Supreme Court looked to the lemon law's definition of consumer for assistance in defining the statutory term "new vehicle"; it found the common thread among the types of consumers defined was that the transfer of the vehicle to the consumer occurred during the term of a prior warranty or was accompanied by a new warranty.[13] Under the Wyoming statutory scheme, the court thus decided to include within the definition of "new vehicle" all vehicles carrying an express new car warranty.[14] Since the car in *Britton* was covered by

---

[11]*See State v. Douty,* 92 Wn.2d 930, 936, 603 P.2d 373 (1979); *Gray v. Goodson,* 61 Wn.2d 319, 324, 378 P.2d 413 (1963).

[12]*Britton v. Bill Anselmi Pontiac–Buick–GMC, Inc.,* 786 P.2d 855, 864 (Wyo. 1990).

[13]*Britton,* 786 P.2d at 864.

[14]*Britton,* 786 P.2d at 864.

such a warranty when first purchased by the consumer, it was held to be a "new vehicle" subject to Wyoming's lemon law.[15]

██ As noted earlier, Washington's lemon law defines a consumer as anyone who buys a new car during the duration of the statutory warranty period. That period ends 2 years after the delivery of a new motor vehicle to a consumer or covers the first 24,000 miles of operation. In the present case, the purchaser bought the automobile when the mileage was less than the 24,000–mile warranty limitation established by statute, and also subject to a new car warranty issued by the manufacturer. Since the purchaser was the first party to take title to the automobile and since she bought it within both the manufacturer's and the statutory warranty period, she argues persuasively that the automobile was new when she bought it. Her argument is bolstered by our conclusion that the automobile fits the definition of "demonstrator", which, as stated earlier, is a new car under this state's lemon law.[16]

██ The "demonstrator" definition we apply here is that provided by the administrator of the Dealer and Manufacturer Control Division of the State of Washington Department of Licensing. It is here uncontroverted that this is the state agency responsible for regulating manufacturers and dealers of new and used motor vehicles, including regulation of the use, registration, titling and sale of "demonstrator" vehicles. By affidavit, the administrator provides the working definition of such vehicles:

> The term "demonstrator" or "demo" vehicle is a well–known and commonly used term in the automotive business and trade. The term is used to describe a vehicle used by the dealer/ manufacturer which has never been titled and is being sold at retail to the public for the first time.
> A "demonstrator" vehicle is in effect created by special licensing and titling privileges granted to dealers and manufacturers. Normally every vehicle must be individually registered

---

[15]*Britton,* 786 P.2d at 865.

[16]*See* RCW 19.118.021(8).

and licensed. Official fees and excise taxes are levied with each registration and licensing. Dealers/manufacturers are granted the use of dealer license plates which exempt them from registration, licensing, most fees, and taxes. Dealer plates are issued to the dealer/manufacturer who can transfer the plates from vehicle to vehicle. Although the laws differ from state to state, "demonstrator" vehicles using dealer plates are not used exclusively for test driving vehicles by customers. Most states including Washington allow "demonstrator" vehicles to be driven by spouses and employees. The result is that "demonstrator" vehicles are commonly used for business and personal purposes even though technically the vehicle's use must be connected with the dealer's/manufacturer's business operations and sales.

It is well settled that deference is appropriate where an administrative agency's construction of statutes is within the agency's field of expertise.[17] Furthermore, the foregoing definition is consistent with our licensing and auto titling laws.[18] Under these circumstances, we accept this administrator's definition of a "demonstrator", and conclude that the vehicle at issue in this case fits within it. When the purchaser bought the automobile, it had been used only by the manufacturer, had never been titled, and was being sold at retail to the public for the first time.

The automobile purchased in this case was a new motor vehicle under Washington's lemon law statutes. The summary judgment in favor of the purchaser is affirmed, as is the Superior Court's award of attorneys' fees and costs pursuant to RCW 19.118.100(3), which is the lemon law proviso allowing a prevailing consumer to recover fees and costs in a superior court action. The purchaser's request for

---

[17]*Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 438, 730 P.2d 653 (1986); *Donais v. Department of Empl. Sec.*, 50 Wn. App. 741, 744, 750 P.2d 661, *review denied*, 110 Wn.2d 1033 (1988).

[18]*See* WAC 308–66–150(4)(g) ("executive" vehicles may be included within the term "demonstrator"); RCW 46.12.010 (no certificate of title needed for vehicle owned by dealer or manufacturer and held for sale, even though used for testing or demonstration).

reasonable attorneys' fees and expenses on appeal also is granted, providing she complies with RAP 18.1.[19]
Affirmed.

CALLOW, C.J., and UTTER, DOLLIVER, DORE, DURHAM, SMITH, and GUY, JJ., concur.

---

[19]*Cf. Schmidt v. Cornerstone Invs., Inc.,* 115 Wn.2d 148, 170, 795 P.2d 1143 (1990); *see also Richter v. Trimberger,* 50 Wn. App. 780, 786, 750 P.2d 1279 (1988).