[No. 46295-4-I.   Division One.   October 8, 2001.]

*In the Matter of the Arbitration of* JERRY D. MOOBERRY.

JERRY D. MOOBERRY, *Respondent*, v. MAGNUM
MANUFACTURING, INC., *Appellant*.

*Helen R. Cullen*; and *J. Robert Leach* (of *Anderson Hunter Law Firm*), for appellant.

*Thomas D. Bigsby*, for respondent.

PER CURIAM — This appeal requires us to interpret certain provisions of chapter 19.118 RCW, Washington's "lemon law" statute. Under that statute, a person who purchases a new, but defective, motor home after June 30, 1998, cannot seek to have the faulty motor home replaced or repurchased by the motor home manufacturer without first giving it one last chance to repair the serious safety defect or nonconformity. But, because Jerry D. Mooberry purchased his new motor home in 1997, he was not required to comply with the final notification requirements in RCW 19.118.041(3)(b) and (c). Thus, the trial court properly refused to dismiss Mooberry's claims against Magnum Manufacturing, Inc. (Magnum), the company that manufactured the chassis used in the construction of the motor home Mooberry purchased. We also reject Magnum's contention that the

defect in Mooberry's motor home did not "substantially impair" its use or safety as that term is defined in RCW 19.118.021(20). While we agree with Magnum that an objective test is to be applied in making that determination, that standard was met here. Accordingly, we affirm.

## FACTS

In 1997, Mooberry purchased a new 40-foot motor home from Great American RV in Tacoma. The purchase price plus tax and license was $163,083.60. Upon delivery, Mooberry noticed the odor of diesel fuel in a carpeted storage compartment area of the motor home where fuel lines were routed between the engine and fuel tank. He returned the coach to the dealer for repairs. The repairs failed. After a number of other attempts to repair the same diesel fume problem also proved unsuccessful, Mooberry sent a letter to Magnum demanding that his defective motor home be repurchased. When Magnum refused, Mooberry submitted a request for arbitration under the lemon law (chapter 19.118 RCW).

After a hearing, the arbitration board ordered Magnum to repurchase the motor home and made a monetary award to Mooberry. Magnum appealed to King County Superior Court.

Following a bench trial at which several witnesses testified, the court entered judgment in favor of Mooberry and against Magnum in the total sum of $217,875.92. That award included $14,445 in attorney fees and costs. A motion for reconsideration was denied. This appeal followed.

## DECISION

We are first asked to consider whether the trial court erroneously refused to dismiss Mooberry's claims against Magnum on the ground that Mooberry failed to make a reasonable number of attempts to cure the diesel fume or odor problem as required under chapter 19.118 RCW. Our

resolution of this issue necessarily turns on the plain and unambiguous language of RCW 19.118.041(2), (3)(a), (b), and (c).[1]

We review issues of statutory construction de novo.[2] Our purpose in interpreting a statute is to ascertain and give effect to the intent of the Legislature.[3] Absent ambiguity, a statute will be held to mean exactly what it says and rules of judicial construction or interpretation will not be applied. "Every provision must be viewed in relation to other provisions and harmonized if at all possible."[4] Statutes relating to the same subject "are to be read together as constituting a unified whole, to the end that a harmonious total statutory scheme evolves which maintains the integrity of the respective statutes."[5]

Magnum contends that Mooberry did not make the requisite number of "reasonable" attempts to cure the diesel odor or fume problem. This argument is based on Magnum's belief that Mooberry had to give the manufacturer one final opportunity to repair the defect under RCW 19.118.041(3). Because RCW 19.118.041(3)(a), (b), and (c) all begin, "In the case of a new motor vehicle that is a motor home" and only subsection 3(a) follows that prefatory language with, "acquired after June 30, 1998," Magnum argues subsections 3(b) and (c) apply to all new motor homes regardless of whether or not they were acquired after June 30, 1998. Because these subsections require a consumer to give a motor home manufacturer one final opportunity to repair the defect before seeking recovery under chapter 19.118 RCW, Magnum argues Mooberry's claims should have been summarily dismissed for failing to comply with this notification requirement. We cannot agree.

---

[1] The full text of these statutory provisions is included at the end of our opinion in Appendix A.

[2] *McFreeze Corp. v. Dep't of Revenue*, 102 Wn. App. 196, 198, 6 P.3d 1187 (2000).

[3] *In re Det. of Chorney*, 64 Wn. App. 469, 476, 825 P.2d 330 (1992).

[4] *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 425, 799 P.2d 235 (1990).

[5] *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974).

■■ The relevant provisions of RCW 19.118.041 must be read together and harmonized. The Legislature added all three subsections of RCW 19.118.041(3) in 1998.[6] Since they were passed simultaneously, the subsections are in pari materia, and should be construed together in determining their meaning.[7] Moreover, courts are not inclined to construe one provision of a statute differently from a parallel provision of the same statute.[8] While it is true that RCW 19.118.041(3)(a) is the only subsection that includes the "acquired after June 30, 1998" language, that subsection specifically refers to the final notification requirements "as provided for in (b) of this subsection," and the duties of motor home manufacturers upon receipt of that notification "as provided for in (c) of this subsection." Thus, we are convinced the limiting language, "a motor home acquired after June 30, 1998," of RCW 19.118.041(3)(a) applies to subsections (b) and (c) as well. This construction also complements the overall scheme of RCW 19.118.041. RCW 19.118.041(2) sets forth the minimum number of attempts that must be made to repair the same serious safety defect or nonconformity in a new motor vehicle, "except in the case of a new motor vehicle that is a motor home acquired after June 30, 1998." Thus, RCW 19.118.041(2) applies to consumers like Mooberry who purchased their new motor home on or before June 30, 1998. When RCW 19.118.041(2) and the three subsections of RCW 19.118.041(3) are read together as a uniform whole, the terms in RCW 19.118.041(3) clearly apply only to persons who purchased new motor homes after June 30, 1998, and RCW 19.118.041(2) applies to all other purchasers of new motor vehicles including those who purchased motor homes on or before June 30, 1998.

Here it is undisputed that Mooberry made a "reasonable number of attempts" to have Magnum cure the diesel odor

---

[6] LAWS OF 1998, ch. 298, § 4.

[7] NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 51.03 (5th ed. 1992).

[8] See Snyder v. Ingram, 48 Wn.2d 637, 639, 296 P.2d 305 (1956).

or fume problem under RCW 19.118.041(2). Thus, the trial court properly refused to summarily dismiss Mooberry's claims against Magnum.

■ Magnum next contends that the trial court erroneously concluded that the diesel fume problem constituted a nonconformity under RCW 19.118.021(13):

"Nonconformity" means a defect, serious safety defect, or condition that substantially impairs the use, value, or safety of a new motor vehicle, but does not include a defect or condition that is the result of abuse, neglect, or unauthorized modification or alteration of the new motor vehicle.

Using what it calls an "objective" test, Magnum argues that the diesel fumes in the storage compartment of Mooberry's motor home did not substantially impair its use, value, or safety. Magnum bases this argument on the fact that the court found "[t]he vapors and odor of diesel fuel were not an actual safety hazard," "there is no actual risk of fire or explosion from vapor and odor of diesel fuel," and that "[t]he presence of the vapors and odor of diesel fuel is not a life threatening defect or non-conformity that impedes the ability to control or operate the motor home." From this, Magnum argues that the motor home was not subject to repair or replacement under chapter 19.118 RCW.

"Substantially impair" is defined by RCW 19.118.021(20) as "to render the new motor vehicle unreliable, or unsafe for ordinary use, or to diminish the resale value of the new motor vehicle below the average resale value for comparable motor vehicles."

We agree with the position taken by Magnum up to a point. An objective test must be used to decide whether a particular defect or condition in a motor vehicle substantially impairs its use, value, or safety. However, we disagree with Magnum's contention that, in order to meet that "objective" test here, Mooberry would have to show that the diesel fumes present in his motor home posed an actual safety hazard.

Magnum contends the determination of what constitutes

substantial impairment cannot be tied in any way to the subjective or reasonable beliefs of the motor vehicle purchaser. In its brief, Magnum states:

> Reasonable minds can often disagree. One can easily hypothecate a set of facts where use of a subjective standard would allow a court to conclude that a buyer reasonably believed that his motor home was unreliable or unsafe even though it was actually both reliable and safe and the manufacturer could do nothing to enhance its reliability or safety. Under this scenario, use of a subjective standard would require a manufacturer to repurchase a motor home even though it was perfectly reliable and safe, simply because the buyer described a subjective belief that a court found to be reasonable.

We believe Magnum overstates the problem. The test, as formulated by Magnum, would squeeze the very essence out of the lemon law. "The basic purpose of lemon law legislation in this country is to permit buyers of faulty automobiles to rid themselves of same after a reasonable number of attempts at repair."[9] The lemon law is intended to provide an effective remedy for the purchaser of a defective new motor vehicle.[10] That laudable goal would be undermined, if not completely thwarted, by Magnum's hindsight-based version of the objective test.

In addition, Magnum's test would have us treat a defect that represents a serious safety hazard the same as one that substantially impairs the safety of a new motor vehicle.[11] However, the Legislature treats the two differently in RCW 19.118.041. Under RCW 19.118.041(2), a new motor vehicle purchaser need make only two attempts to diagnose or repair a serious safety defect before seeking repurchase under the lemon law, whereas a nonconformity must be subject to diagnosis or repair at least four times

---

[9] *Chrysler Motors Corp. v. Flowers*, 116 Wn.2d 208, 211, 803 P.2d 314 (1991).

[10] *See* RCW 19.118.005.

[11] Magnum states in its reply brief: "Under an objective standard, the trial court's finding that the vapors and odor of diesel oil were not an actual safety hazard prohibits a conclusion that this same diesel odor and vapor constituted a 'non-conformity'."

before any remedies are available. Therefore, we are convinced that the Legislature did not intend the stringent standard articulated by Magnum to be the one used to determine whether a particular defect or condition constitutes a nonconformity under the lemon law.

Here the trial court found both that Mooberry "subjectively and reasonably believed [the vapors and odor of diesel fuel] substantially impaired the safety, use and value of the motor home," and that he "was reasonable in his subjective perception and fear that the existence of the vapor and odor of diesel fuel could affect his safety and the value of the motor home." These findings of fact are supported by the record. Given these findings, the trial court properly concluded that the diesel fume problem constituted a nonconformity under chapter 19.118 RCW. We find no error.

Finally, both sides seek an award of reasonable attorney fees and/or costs on appeal. Since Magnum is not the prevailing party on appeal, its request for statutory costs is denied. Subject to compliance with RAP 18.1, Mooberry's request for attorney fees and costs is granted.[12]

Affirmed.

## APPENDIX A

RCW 19.118.041 provides in pertinent part:

(2) Reasonable number of attempts, except in the case of a new motor vehicle that is a motor home acquired after June 30, 1998, shall be deemed to have been undertaken by the manufacturer, its agent, or the new motor vehicle dealer to conform the new motor vehicle to the warranty within the warranty period, if: (a) The same serious safety defect has been subject to diagnosis or repair two or more times, at least one of which is during the period of coverage of the applicable manufacturer's written warranty, and the serious safety defect continues to exist; (b) the same nonconformity has been subject to diagnosis or repair four or more times, at least one of which is during the

---

[12] See Chrysler Motors Corp., 116 Wn.2d at 216-17.

period of coverage of the applicable manufacturer's written warranty, and the nonconformity continues to exist; or (c) the vehicle is out of service by reason of diagnosis or repair of one or more nonconformities for a cumulative total of thirty calendar days, at least fifteen of them during the period of the applicable manufacturer's written warranty. For purposes of this subsection, the manufacturer's written warranty shall be at least one year after the date of the original delivery to the consumer of the vehicle or the first twelve thousand miles of operation, whichever occurs first.

(3)(a) In the case of a new motor vehicle that is a motor home acquired after June 30, 1998, a reasonable number of attempts shall be deemed to have been undertaken by the motor home manufacturers, their respective agents, or their respective new motor vehicle dealers to conform the new motor vehicle to the warranty within the warranty period, if: (i) The same serious safety defect has been subject to diagnosis or repair one or more times during the period of coverage of the applicable motor home manufacturer's written warranty, plus a final attempt to repair the vehicle as provided for in (b) of this subsection, and the serious safety defect continues to exist; (ii) the same nonconformity has been subject to repair three or more times, at least one of which is during the period of coverage of the applicable motor home manufacturer's written warranty, plus a final attempt to repair the vehicle as provided for in (b) of this subsection, and the nonconformity continues to exist; or (iii) the vehicle is out of service by reason of diagnosis or repair of one or more nonconformities for a cumulative total of sixty calendar days aggregating all motor home manufacturer days out of service, and the motor home manufacturers have had at least one opportunity to coordinate and complete an inspection and any repairs of the vehicle's nonconformities after receipt of notification from the consumer as provided for in (c) of this subsection. For purposes of this subsection, each motor home manufacturer's written warranty must be at least one year after the date of the original delivery to the consumer of the vehicle or the first twelve thousand miles of operation, whichever occurs first.

(b) In the case of a new motor vehicle that is a motor home, after one attempt has been made to repair a serious safety defect, or after three attempts have been made to repair the

same nonconformity, the consumer shall give written notification of the need to repair the nonconformity to each of the motor home manufacturers at their respective corporate, zone, or regional office addresses to allow the motor home manufacturers to coordinate and complete a final attempt to cure the nonconformity. The motor home manufacturers each have fifteen days, commencing upon receipt of the notification, to respond and inform the consumer of the location of the facility where the vehicle will be repaired. If the vehicle is unsafe to drive due to a serious safety defect, or to the extent the repair facility is more than one hundred miles from the motor home location, the motor home manufacturers are responsible for the cost of transporting the vehicle to and from the repair facility. The motor home manufacturers have a cumulative total of thirty days, commencing upon delivery of the vehicle to the designated repair facility by the consumer, to conform the vehicle to the applicable motor home manufacturer's written warranty. This time period may be extended if the consumer agrees in writing. If a motor home manufacturer fails to respond to the consumer or perform the repairs within the time period prescribed, that motor home manufacturer is not entitled to a final attempt to cure the nonconformity.

(c) In the case of a new motor vehicle that is a motor home, if the vehicle is out of service by reason of diagnosis or repair of one or more nonconformities by the motor home manufacturers, their respective agents, or their respective new motor vehicle dealers for a cumulative total of thirty or more days aggregating all motor home manufacturer days out of service, the consumer shall so notify each motor home manufacturer in writing at their respective corporate, zone, or regional office addresses to allow the motor home manufacturers, their respective agents, or their respective new motor vehicle dealers an opportunity to coordinate and complete an inspection and any repairs of the vehicle's nonconformities. The motor home manufacturers have fifteen days, commencing upon receipt of the notification, to respond and inform the consumer of the location of the facility where the vehicle will be repaired. If the vehicle is unsafe to drive due to a serious safety defect, or to the extent the repair facility is more than one hundred miles from the motor home location, the motor home manufacturers are responsible for the cost of transporting the vehicle to and from

the repair facility. Once the buyer delivers the vehicle to the designated repair facility, the inspection and repairs must be completed by the motor home manufacturers either (i) within ten days or (ii) before the vehicle is out of service by reason of diagnosis or repair of one or more nonconformities for sixty days, whichever time period is longer. This time period may be extended if the consumer agrees in writing. If a motor home manufacturer fails to respond to the consumer or perform the repairs within the time period prescribed, that motor home manufacturer is not entitled to at least one opportunity to inspect and repair the vehicle's nonconformities after receipt of notification from the buyer as provided for in this subsection (3)(c).