**Ronald MEYERS, Appellant**

v.

**VOLVO CARS OF NORTH AMERICA, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 26, 2004.

Filed June 14, 2004.

Michael D. Powers, Glen Mills, for appellant.

Paul R. Robinson, Pittsburgh, for appellee.

Before: DEL SOLE, P.J., MUSMANNO and ORIE MELVIN, JJ.

ORIE MELVIN, J.

¶ 1 Appellant, Ronald Meyers, appeals from the Order granting the Motion for Summary Judgment filed by Volvo Cars of North America, Inc. ("Volvo Cars"). He asserts that the trial court erred in granting summary judgment with respect to his breach of express warranty claims and his Automobile Lemon Law claims. We reverse and remand.

¶ 2 The facts and procedure of this case are as follows. On or about June 14, 1997, Meyers purchased a 1997 Volvo 960 from Star Chevrolet–Volvo ("Star"). When Meyers purchased it, the Volvo had 9,628 miles on its odometer. The Volvo had never been titled before Meyers purchased it. C.R. at 7, Response of Plaintiff to Volvo Cars of North America, Inc.'s Motion for Summary Judgment, ex. A ¶ 5. Meyers contends in his brief that he was told the Volvo had been used only as a demonstrator car. Volvo Cars responds that Meyers conceded that he was told that the vehicle was used personally by Star's owner and wife.

¶3 Meyers experienced mechanical problems with the car after he purchased it. For example, on June 30, 1997, Meyers took the Volvo, which then had 10,421 miles on its odometer, to Star complaining of grinding and knocking sounds, among other things. Star attempted to repair the car. Meyers subsequently continued to experience problems with the car.

¶4 Meyers eventually filed suit against Volvo Cars in Philadelphia County. Meyers' complaint had four counts. In Count I, Meyers sought relief pursuant to Pennsylvania's Automobile Lemon Law, 73 P.S. §§ 1951–1963, alleging that vehicle defects substantially impaired the Volvo's value despite several attempts Star made at repair. In Count II, Meyers alleged that Volvo Cars' breach of the Volvo's warranties entitled Meyers to recovery under the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–2312. In Count III, Meyers alleged that the Volvo Cars' breach of the Volvo's warranties entitled Meyers to recover under Article 2 of the Uniform Commercial Code, 13 Pa.C.S.A. §§ 2101–2725. Finally, in Count IV, Meyers alleged that Volvo Cars recklessly, wantonly and willfully breached the Volvo's warranties, thereby entitling Meyers to treble damages under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1—201–9.2.

¶5 The case was transferred for the convenience of the parties pursuant to Pa. R.C.P. 1006(d)(1) from Philadelphia County to Allegheny County, where it proceeded to arbitration. On December 6, 2002, an arbitration panel entered an award in favor of Meyers in the amount of $4,070, plus costs. Volvo Cars appealed from the arbitration award to the Court of Common Pleas of Allegheny County and filed a Motion for Summary Judgment on February 5, 2003. After holding argument on the motion, the trial court granted the Motion for Summary Judgment in favor of Volvo Cars on April 15, 2003 dismissing Meyers' complaint with prejudice. The trial court explained:

At argument, the parties agreed that the implied warranty claims which are a part of Count III should be dismissed because the lawsuit was filed over four years after the purchase. The remainder of Count III, the express warranty claim, was then dismissed by the Court because Plaintiff could not identify which provision of the express warranty had been violated. In fact, there was no copy of the express warranty of record anywhere. It was Plaintiff's burden to produce it in response to the motion. His failure to do so on a timely basis was a proper basis to grant summary judgment as to all of Count III and is not excused by the late submission via his Motion for Reconsideration.

The Court concluded that the remaining Counts (I, II and IV) of the Complaint should also be dismissed, with prejudice, because the undisputed evidence showed that Lemon Law claim (Count I) could not proceed as a matter of law, and because all of the remaining claims were contingent on the success of the Lemon Law Claim.

Trial Court Opinion, 7/17/03, at 1–2 (citation and footnote omitted). This appeal follows.

¶6 On appeal, Meyers raises five issues:
A. Did the Lower Court err when it ruled that there was no substantive issue of material fact as to whether plaintiff's automobile was covered under the lemon law's definition of a "new motor vehicle" which includes new vehicles, demonstrator vehicles and dealer cars?
B. Did the lower court err when it held that a lemon law plaintiff must demonstrate three repair attempts within the first 12 months and 12,000 miles of use in order to maintain a lemon law claim?

C. Did the lower court err when it failed to hold that defendant was "estopped" from asserting that the plaintiff's vehicle was not a "new" vehicle when defendant's own authorized sales and service dealer sold the vehicle to plaintiff as a "new" vehicle as stated on the vehicle order form?

D. Did the lower court err when it held that plaintiff's failure to attach a copy of the express warranty required the dismissal of plaintiff's breach of warranty count even though the existence of the warranty and the extent of the warranty coverage was set forth in detail in the record?

E. Did the lower court abuse its discretion when it denied plaintiff's Motion for Reconsideration which contained a copy of the express warranty as an exhibit thereto?

Appellant's brief at 4.

¶ 7 We first note the applicable standard of review of a trial court's entry of summary judgment. "[A]n appellate court may reverse the entry of summary judgment only where it finds that the trial court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law." *Phillips v. Cricket Lighters*, 576 Pa. 644, 652, 841 A.2d 1000, 1004 (2003). "The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 586, 812 A.2d 1218, 1221 (2002). Because such an inquiry involves solely questions of law, our review is plenary. *Taylor v. Woods Rehabilitation Service*, 846 A.2d 742, 744 (2004). Moreover, this Court is not bound by the conclusions of law of the trial court, as we may reach our own conclusions and draw our own inferences. *Adamski v. Allstate Ins.*, 738 A.2d 1033 (Pa.Super.1999), *appeal denied*, 563 Pa. 655, 759 A.2d 381 (2000) (citation omitted).

■ ¶ 8 Meyers' first argument on appeal calls into question the trial court's legal conclusion that the instant Volvo was not a "new motor vehicle" as defined in the Automobile Lemon Law. Upon our plenary review, we find as a matter of law that the instant Volvo falls within the Automobile Lemon Law's definition of a "new motor vehicle."

¶ 9 Pennsylvania's Automobile Lemon Law provides purchasers of new motor vehicles with rights of repair, refund and replacement against vehicle manufacturers. The Automobile Lemon Law defines "new motor vehicle" in relevant part as follows:

"New motor vehicle." Any new and unused self-propelled, motorized conveyance driven upon public roads, streets or highways which is designed to transport not more than 15 persons, which was purchased ... and is registered in the Commonwealth ... and is used, ... or bought for use primarily for personal, family or household purposes, including a vehicle used by a manufacturer or dealer as a demonstrator or dealer car prior to its sale.

73 P.S. § 1952.

¶ 10 The trial court did not explain its reasoning in determining that that the Volvo was not a new motor vehicle under the Automobile Lemon Law. *See* Trial Court Opinion, 7/16/03, at 5 (stating "The Court properly ruled that a jury would not be allowed to find that the car was "new" for purposes of the Lemon Law when Plaintiff acquired it."). Apparently, the trial court agreed with Volvo Cars' argument that a vehicle sold at a discount with 9,628 miles on it could not be considered new.

¶ 11 The above definition includes three types of vehicles as "new motor vehicles:" (1) new and unused vehicles; (2) demonstrator cars; and (3) dealer cars. 73 P.S. § 1952. Seeking to fit the Volvo within one of these three categories, Meyers argues that the Volvo is a new vehicle because the Vehicle Order form issued by Star identifies the Volvo as a "new vehicle," and because Meyers was told by Star representatives that the Volvo had never been titled previous to his purchase and was considered new. Meyers argues alternatively that the vehicle is a demonstrator vehicle or dealer car because repair orders for the Volvo dated prior to Meyers' purchase of it refer to the Volvo as "Mr. Reihley's demo."

¶ 12 Volvo Cars counter-argues that the Volvo was not a "new motor vehicle." Volvo Cars emphasizes that the Volvo: (1) had 9,628 miles on it when Meyers purchased it; (2) was sold to Meyers at a substantial discount from a "new" price; and (3) was used prior to Meyers' purchase as the personal vehicle of the dealership's owner and wife.

¶ 13 We agree with Meyers' alternative argument that the Volvo falls within the ambit of the statute's definition of a "new motor vehicle" as "a demonstrator or dealer car." The facts emphasized by Volvo Cars—that the Volvo: (1) had 9,628 miles on it when Meyers purchased it; (2) was sold to Meyers at a substantial discount from a new price; and (3) was used prior to Meyers' purchase as the personal vehicle of the dealership's owner and wife— support the conclusion that the Volvo was not a "new motor vehicle" as the phrase might be understood colloquially. Of course, a "new motor vehicle" colloquially speaking is not a used vehicle. The Automobile Lemon Law definition of "new motor vehicle," however, includes not only "new and unused" vehicles, but also vehicles "used by a manufacturer or dealer as a demonstrator or dealer car prior to its sale."

¶ 14 The Automobile Lemon Law does not define "dealer" or "demonstrator car." Nonetheless, we find persuasive the explanation of the ordinary meaning of the terms as supplied by the Supreme Court of Washington in *Chrysler Motors Corp. v. Flowers,* 116 Wash.2d 208, 803 P.2d 314 (1991). Construing the meaning of the term "demonstrator" in the Washington Lemon Law, the court explained:

> The term "demonstrator" or "demo" vehicle is a well-known and commonly used term in the automotive business and trade. The term is used to describe a vehicle used by the dealer/manufacturer which has never been titled and is being sold at retail to the public for the first time.
>
> A "demonstrator" vehicle is in effect created by special licensing and titling privileges granted to dealers and manufacturers. Normally every vehicle must be individually registered and licensed. Official fees and excise taxes are levied with each registration and licensing. Dealers/manufacturers are granted the use of dealer license plates which exempt them from registration, licensing, most fees, and taxes. Dealer plates are issued to the dealer/manufacturer who can transfer the plates from vehicle to vehicle. Although the laws differ from state to state, "demonstrator" vehicles using dealer plates are not used exclusively for test driving vehicles by customers. Most states including Washington allow "demonstrator" vehicles to be driven by spouses and employees. The result is that "demonstrator" vehicles are commonly used for business and personal purposes even though technically the vehicle's use must be connected with the dealer's/manufacturer's business operations and sales.

*Chrysler Motors Corp.,* 116 Wash.2d at 215–216, 803 P.2d at 318 (quoting an affidavit of the Administrator of the Dealer and Manufacturer Control Division of the State of Washington Department of Licensing).

¶ 15 The definition of "dealer" or "demonstrator car" suggested by *Chrysler Motors Corp.* is consistent with Pennsylvania law. Pennsylvania's Vehicle Code provides that "[n]o certificate of title is required for: ... (3)[a] new vehicle owned by a manufacturer or registered dealer before and until sale." 75 Pa.C.S.A. § 1102(3). Moreover, Pennsylvania's New Motor Vehicle Damage Disclosure Act, which like the Automobile Lemon Law provides purchasers of new motor vehicles rights against dealers of new motor vehicles, defines "new motor vehicle" as follows:

> "New motor vehicle." A motor vehicle, *regardless of mileage, which has never been registered or titled to an ultimate purchaser in this Commonwealth or any other state or jurisdiction* or which has not been sold or bargained to or exchanged with an ultimate purchaser or which has not been given away. A transfer between dealers for the purpose of resale shall not be considered as a transfer to an ultimate purchaser.

73 P.S. § 1970.2 (emphasis added). Because the Vehicle Code and New Motor Vehicle Damage Disclosure Act apply to motor vehicles just as the Automobile Lemon Law does, they are useful in determining the meaning of the Automobile Lemon Law. 1 Pa.C.S.A. § 1932 (requiring that statutes which relate to the same persons or things or to the same class of persons or things should be construed together, if possible).

¶ 16 Based on the foregoing, we find that a "demonstrator" or "dealer car" for purposes of the Automobile Lemon Law is a vehicle used by the dealer/manufacturer which has never been titled and is being sold at retail to the public for the first time.

¶ 17 Applying this construction to the admitted facts in the instant case, we find, as a matter of law, that Meyers' Volvo is a "new motor vehicle" under the Automobile Lemon Law. The Certificate of Title for the Volvo, which is attached to Meyers' Complaint, reveals that the Volvo had no state title prior to Pennsylvania, and that the Volvo was titled in Pennsylvania on August 16, 1997 shortly after Meyers purchased it on or about June 14, 1997. C.R. at 1, Complaint ex. A. Meyers' Volvo is a new motor vehicle under the Automobile Lemon Law—even though the Volvo: (1) had 9,628 miles on it when Meyers purchased it; (2) was sold to Meyers at a substantial discount from a "new" price; and (3) was admittedly only used prior to Meyers' purchase as the personal vehicle of the dealership's owner and wife—because the Volvo was not titled before Meyers purchased it. As such it constitutes "a demonstrator or dealer car."

■ ¶ 18 Meyers' second argument is that the trial court incorrectly "infers" that a claim under the Automobile Lemon Law is only viable if a plaintiff can demonstrate three repair attempts to the vehicle underlying the claim within the first 12 months and 12,000 miles of vehicle use. We agree with Meyers that the Automobile Lemon Law requires no such demonstration. *See* 73 P.S. § 1956 (specifying the significance of three repair attempts). However, we do not agree with Meyers that the trial court held to the contrary.

¶ 19 Our reading of the trial court opinion is that the trial court entered its summary judgment Order with respect to Meyers' Automobile Lemon Law claim for two reasons. First, the trial court found that the Volvo was not a "new motor vehicle." Second, the trial court found that

Meyers did not produce facts sufficient to create a jury question as to whether a "nonconformity" manifested in the Volvo within the first 12,000 miles of the Volvo's use. We have already found that the trial court erred in its holding that the Volvo was not a "new motor vehicle." We now address the second basis for the trial court's dismissal of Meyers' Automobile Lemon Law claim.

¶ 20 To address the second basis for the trial court's grant of summary judgment, we must review the requirements of the Automobile Lemon Law. As already noted, the Automobile Lemon Law imposes obligations of vehicle repair and duties of vehicle refund or replacement on new motor vehicle manufacturers. A manufacturer's duty of vehicle refund or replacement arises only if the manufacturer fails to fulfill its obligation of vehicle repair. 73 P.S. § 1955. A manufacturer's obligation of repair only arises if a new motor vehicle manifests a "nonconformity"[1] within a certain period. With respect to a manufacturer's obligation of repair, the Automobile Lemon Law provides:

> (a) REPAIRS REQUIRED.—The manufacturer of a new motor vehicle sold ... and registered in the Commonwealth shall repair or correct, at no cost to the purchaser, a nonconformity which substantially impairs the use, value or safety of said motor vehicle which may occur within a period of one year following the actual delivery of the vehicle to the purchaser, within the first 12,000 miles of use or during the term of the warranty, whichever may first occur.

73 P.S. § 1954(a).

■ ¶ 21 The trial court dismissed Meyers' Automobile Lemon Law claim because Meyers took the Volvo to Star for repairs only once during the first 12,000 miles of the Volvo's use. The Volvo already had 9,628 miles on its odometer when Meyers purchased it. The only time that Meyers took the Volvo to Star for repairs before the Volvo's odometer passed 12,000 miles was on June 30, 1997, when the odometer was at 10,421 miles. C.R. at 7, Response of Plaintiff to Volvo Cars of North America, Inc.'s Motion for Summary Judgment ¶ 15. The problem with the Volvo on June 30, 1997 was, "among other things, a suspension grinding and knocking sound." Appellant's brief at 6; see also C.R. at 1, Complaint ¶ 20 (describing the June 30, 1997 problem as "defective trunk, rattle condition and defective radio"). The trial court found that Meyers' evidence of a single visit to Star for repairs to the Volvo did not create a jury question as to whether a "nonconformity" manifested in the Volvo within the first 12,000 miles of the Volvo's use. We disagree with the trial court.

■ ¶ 22 A manufacturer's liability under the Automobile Lemon Law does not turn on the number of repairs made to a new motor vehicle during the "period of one year following the actual delivery of the vehicle to the purchaser, within the first 12,000 miles of use or during the term of the warranty." A manufacturer's obligations of vehicle repair and duties of vehicle refund or replacement turn on whether or not the vehicle manifests a "nonconformity" during the period and the manufacturer's success at repair of the nonconformity.

¶ 23 Viewed in the light most favorable to Meyers, the record could support the conclusion that the Volvo manifested a nonconformity within its first 12,000 miles of use and that Volvo Cars failed to repair that nonconformity. Meyers concedes that

---

1. The Automobile Lemon Law defines a "nonconformity" as "[a] defect or condition which substantially impairs the use, value or safety of a new motor vehicle and does not conform to the manufacturer's express warranty." 73 P.S. § 1952.

he delivered the Volvo to Star for repairs only once during the first 12,000 miles [2] of the Volvo's use, on June 30, 1997, but he contends that Star failed to repair the Volvo's suspension problems on that date. According to Meyers

> [T]he plaintiff's June 30, 1997 suspension complaint was the first of many suspension complaints. The plaintiff complained of suspension grinding and knocking. In response to the complaint, the dealership tightened the vehicle's front suspension components. This condition was never repaired by Volvo and continues to the present day.
>
> Additional suspension noise and other related suspension concerns such as vehicle pulling have been made on 9/24/97 at 12,459 miles; 1/20/98 at 15,700 miles; 11/2/98 at 22,937 miles; 8/7/00 at 32,432 miles; 11/1/00 at 34,035 miles; 11/22/00 at 34,374 miles. And the suspension noises continue to this day.

C.R. at 7, Response of Plaintiff to Volvo Cars of North America, Inc.'s Motion for Summary Judgment, ¶ 15 (citations omitted). Evidence in the record supports Meyers argument, as Meyers had to submit the Volvo for suspension repair at least four times in the three years following the June 30, 1997 attempted repair. For example, repair invoices for the Volvo attached to Meyers' Response to Volvo Cars' Motion for Summary Judgment indicate that repair work was done on the Volvo's suspension on: September 26, 1997, at mileage of 12,459; January 20, 1998, at mileage of 15,700; September 6, 2000, at mileage of 32,918; and November 8, 2000, at mileage of 34,035. C.R. at 7, Response of Plaintiff to Volvo Cars of North America, Inc.'s Motion for Summary Judgment,

ex. D. Moreover, Meyers contends that the "grinding and knocking sound from the suspension has never been repaired by any Volvo dealership despite numerous opportunities to repair the same. The sounds continue[ ] to this day." *Id.* ex. A. Viewing the record in the light most favorable to Meyers, as we must, we conclude that a genuine issue of material fact exists as to whether the Volvo manifested a nonconformity within the first 12,000 miles of its use that substantially impairs its use or value.

¶ 24 Meyers' third argument is that Volvo Cars is estopped from asserting that the Volvo is anything other than a new vehicle because the vehicle order form issued by Star referred to the Volvo as "new." According to Meyers,

> [t]he vehicle order form which was drafted by Star clearly states that the vehicle was "new". The vehicle order form had two other blocks which could have been marked indicating that the subject vehicle was a "demo" or a used vehicle. The vehicle order form was signed by a representative of Star.

Appellant's brief at 14. This argument is moot. We have already concluded as a matter of law that the Volvo is a "new motor vehicle," as the admitted facts support the conclusion that the vehicle comes within the definition of demonstrator or dealer car.

¶ 25 Meyers' fourth argument is that the trial court erred when it held that his failure to include a copy of the Volvo's express warranty in the record required the dismissal of the count in his complaint alleging breach of the express warranty.[3]

---

**2.** Since Meyers' first complaint of a "nonconformity" clearly occurred within the first 12,000 miles of total usage, we need not decide whether "the first 12,000 miles of use" includes use of the Volvo as a "demonstrator or dealer car prior to its sale."

**3.** Meyers describes the warranty as "a 4 year/50,000 mile express warranty covering all pertinent components of the vehicle." Appellant's brief at 16.

Meyers argues that despite his failure to include a copy of the express warranty in his response to Volvo Cars' Motion for Summary Judgment, evidence of the warranty sufficient to enable his express warranty claim to survive summary judgment was contained in the record in the form of repair invoice documentation of repeated repairs of the Volvo made pursuant to the warranty. Meyers claims that "[a] review of these repair invoices demonstrates that the invoices reflect that the complained of components are covered under the warranty and that the repairs performed on the complained of components are warranty repairs." *Id.* at 17.

¶ 26 The trial court dismissed the express warranty count of Meyers' complaint, Count III, "because [Meyers] could not identify which provision of the express warranty had been violated. In fact, there was no copy of the express warranty of record anywhere." Trial Court Opinion, 7/17/03, at 1–2. The trial court observed that "[i]t was [Meyers'] burden to produce [the express warranty] in response to the [summary judgment] motion." *Id.* at 2.

¶ 27 At the time that it decided the summary judgment motion, the trial court did not err in dismissing Meyers' express warranty claim. Meyers had failed to provide the trial court with a copy of the express warranty when he filed his response to Volvo Cars' Motion for Summary Judgment. The trial court was not required to extrapolate the terms of the Volvo's warranty from invoices of repairs conducted pursuant to the warranty. *See* Pa.R.C.P. 1019(i), 42 Pa.C.S.A. (requiring that when claims are based on writings, like Meyers' express warranty claim, "the pleader shall attach a copy of the writing, or the material part thereof," unless the writing is not accessible to the pleader). Indeed, such repairs suggest Volvo Cars' compliance with the warranty, not its breach of the warranty.

¶ 28 However, because we have found that it is necessary to remand this case for further proceedings, we find that the Rules of Civil Procedure provide Meyers with the right to amend his complaint to include a copy of the express warranty. Under Pa.R.C.P. 1033:

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

"Amendments to pleadings should be granted liberally so that cases are determined on their merits." *Fowkes v. Shoemaker*, 443 Pa.Super. 343, 661 A.2d 877, 880 (1995). Amendments to pleadings should be denied, however, if "they violate the law or prejudice the rights of the opposing party." *Gutierrez v. Pennsylvania Gas & Water Co.*, 352 Pa.Super. 282, 507 A.2d 1230, 1232 (1986). Here, there is no prejudice to Volvo Cars in allowing Meyers to amend his complaint to include a copy of the express warranty. Volvo Cars has been aware of the express warranty claim since Meyers originally filed his complaint.

¶ 29 Meyers' fifth and final argument is related to his fourth. He argues that the trial court abused its discretion in denying his motion for reconsideration to which he attached a copy of the express warranty. This argument is moot. We have already determined that the Pa.R.C.P. 1033 provides Meyers with the right to amend his complaint on remand to include a copy of the express warranty.

¶ 30 The Order granting summary judgment is reversed. This case is remanded for further proceedings consistent with this Opinion.

¶ 31 Order reversed. Case remanded. Jurisdiction relinquished.