57 P.3d 1156 (2002)
THURSTON COUNTY, a municipal corporation and subdivision of the State of Washington, Petitioner,
v.
The COOPER POINT ASSOCIATION, The League of Women Voters of Thurston County, Jolene Unsoeld, Michael Lynch, Tom Mumford, Lea Mitchell, Sylviann Frankus, and Western Washington Growth Management Hearings Board, Respondents.
No. 71746-0.
Supreme Court of Washington, En Banc.
November 21, 2002.
*1158 Christine Gregoire, Atty. Gen., Marjorie Smitch, Sharon Eckholm, Asst. Attys. Gen., for Petitioner.
Barnett Kalikow, Ed Holm, Thurston County Prosecutor, Jeffery Fancher, Deputy, Olympia, for Respondents.
Tim Trohimovich, Seattle, amicus curiae on behalf on 1000 Friends of Washington & Washington Environmental Council.
Kristopher Tefft, Olympia, amicus curiae on behalf of Building Industry Assoc. of Washington & Washington Assoc. of Realtors.
*1157 ALEXANDER, C.J.
We have been asked to review a decision of the Court of Appeals in which that court affirmed a Western Washington Growth Management Hearings Board (Board) determination that a proposal by Thurston County (County) to extend a sewer line from an urban sewage system to the rural Cooper Point area of Thurston County violates a provision in this state's Growth Management Act (GMA), RCW 36.70A.110(4). The principal issues before us are whether County's proposal is subject to development restrictions imposed by the aforementioned statutory provision and, if so, whether County has shown that its proposal is necessary to protect basic public health, safety and the environment. We answer the first question "yes" and the second "no" and conclude that the Board did not err in determining that County's proposal violates RCW 36.70A.110(4). Accordingly, we affirm the Court of Appeals.

I.
In 1995, County adopted its first comprehensive plan for local development as it was required to do by a provision in the GMA.[1] In its plan, County designated the northern portion of the Cooper Point area as "rural." This area lies within a narrow peninsula that extends northward roughly from the city limits of Olympia and the northern boundary of The Evergreen State College into an unincorporated area of Thurston County. The peninsula separates Budd Inlet on the east from Eld Inlet on the west. The area contains a number of residences, most of which *1159 lie along the shoreline of Budd and Eld Inlets. Except for two subdivisions which predate the GMA, Tamoshan with 89 residences and Beverly Beach with 22 residences, each of the 998 residences located in the rural Cooper Point area have individual septic systems for the collection and dispersal of their household sewage. Although 96 of the 998 septic systems have failed in the past, each failure was remedied by an on-site solution in an environmentally safe manner.
The more densely populated Tamoshan and Beverly Beach subdivisions each possess their own sewage system. These systems collect the sewage from all homes within the subdivision and treat it at a plant that is located within the subdivision. The effluent from each plant is then discharged into Puget Sound. The Beverly Beach treatment plant is homeowner-managed whereas County operates the Tamoshan plant in conjunction with a committee of homeowners that advises County on its management. Although both of these sewage treatment plants have outlasted their projected life, they currently operate in compliance with federal and state environmental standards.
As far back as 1992, County began working with the Cooper Point community to address future wastewater management concerns on Cooper Point. This process culminated in 1999 when County amended its comprehensive plan to include the Cooper Point Wastewater Facilities General Plan (Plan). The Plan enumerated five wastewater management alternatives for Tamoshan and Beverly Beach, to wit: (1) do nothing; (2) rebuild the Tamoshan plant further inland with the capacity to accommodate sewage from Tamoshan and Beverly Beach and adopt an enhanced septic system operation; (3) separate sewer service areas and develop an enhanced on-site septic operation and maintenance program; (4) construct a new limited capacity sewer line connecting the Tamoshan and Beverly Beach subdivisions to the sewer system of the Lacey, Olympia, Tumwater, and Thurston County Wastewater Management Partnership (LOTT); or (5) construct an extensive sewer system that would service the entire Cooper Point area.
Over the objection of numerous Cooper Point residents, County adopted the fourth option as its "preferred" alternative. Consequently, it planned to construct a four-inch sewer line to connect the sewage systems at Tamoshan and Beverly Beach with the LOTT sewage treatment system. It also planned to provide up to 100 future sewer hook-ups for existing outlying single-family homes in the event of individual septic system failures.
In February 2000, the Cooper Point Association, the League of Women Voters of Thurston County, and several individuals (Respondents) filed a petition with the Board claiming that the proposed sewer line violated the State Environmental Policy Act (chapter 43.21C RCW) (SEPA), and the GMA. Although the Board dismissed their SEPA claim, it concluded that County's proposal violated a portion of the GMA, RCW 36.70A.110(4), which prohibits governments from extending or expanding "urban governmental services" into "rural areas except in those limited circumstances shown to be necessary to protect basic public health and safety and the environment." The Board ordered County to abandon its planned extension of sewer service from the LOTT system to Cooper Point. County appealed the Board's decision to Thurston County Superior Court, which transferred the matter to Division Two of the Court of Appeals.[2] The Court of Appeals affirmed the Board's decision.
We granted County's petition to review the decision of the Court of Appeals and thereafter extended amicus curiae status to 1000 Friends of Washington and the Washington Environmental Council, and the Building Industry Association of Washington and Washington Association of Realtors (BIAW).[3]

II.
When reviewing a decision of the Board, we apply the standards of chapter *1160 34.05 RCW, the Administrative Procedure Act (APA), and base our review upon the record made before the Board. City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998). Under the judicial review provision of the APA, the "burden of demonstrating the invalidity of [the Board's decision] is on the party asserting the invalidity." RCW 34.05.570(1)(a). The validity of that decision shall be determined in accordance with the standards of review provided in RCW 34.05.570. RCW 34.05.570(3) sets forth nine bases for granting relief from the Board's decision. County, the party that is seeking to establish the invalidity of the Board's decision, contends only that the "[the Board] has erroneously interpreted or applied the law," and that the "order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter." RCW 34.05.570(3)(d), (e). In reviewing issues of law under RCW 34.05.570(3)(d), our review is de novo. Redmond, 136 Wash.2d at 46, 959 P.2d 1091. "[S]ubstantial evidence is `a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" Id. (quoting Callecod v. Wash. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510, review denied, 132 Wash.2d 1004, 939 P.2d 215 (1997)). On mixed questions of law and fact, we determine the law independently, then apply it to the facts as found by the agency. Hamel v. Employment Sec. Dep't, 93 Wash.App. 140, 145, 966 P.2d 1282 (1998), review denied, 137 Wash.2d 1036, 980 P.2d 1283 (1999).

III.
RCW 36.70A.110(4) provides as follows:
In general, cities are the units of local government most appropriate to provide urban governmental services. In general, it is not appropriate that urban governmental services be extended to or expanded in rural areas except in those limited circumstances shown to be necessary to protect basic public health and safety and the environment and when such services are financially supportable at rural densities and do not permit urban development.
(Emphasis added.) We must first determine if, as County contends, the Board erred in determining that RCW 36.70A.110(4)'s limitation on extension or expansion of urban governmental services into rural areas precludes County from developing the proposed sewer line into the Cooper Point area. In support of its contention, County asserts that (1) the proposed sewer line is not an extension or an expansion of an urban governmental service and (2) the Cooper Point area of Thurston County is not "rural" under that same provision.
A. Is County's proposed sewer line an extension or expansion of an urban governmental service?
As noted above, County asserts that its proposed sewer line to the Cooper Point peninsula is not prohibited by RCW 36.70A.110(4). It maintains that what it plans to do does not constitute an extension or expansion of an urban governmental service. More specifically, County argues that the proposed sewer line merely replaces an existing governmental service with another governmental service. In support of that argument, it notes that the proposed sewer line would provide service to homes that are currently served by the sewage treatment facilities at Tamoshan and Beverly Beach. Although the Respondents agree with County that a "true replacement does not fall [under RCW 36.70A.110(4)'s development limitations]," they respond that the evidence that was presented to the Board does not support County's contention that the proposed sewer line constitutes a mere replacement of an existing urban governmental service. Answer to Pet. for Review at 11.
After reviewing the record, we find that we agree with the Respondents that the evidence does not support a conclusion that what County proposes to do is not an extension or expansion of the urban governmental service. We say this because LOTT is an existing urban governmental service[4] which *1161 does not currently serve the Cooper Point area. County's construction of a sewer line through approximately four miles of an area that is not part of its service area in order to connect the LOTT sewage treatment system with the privately developed sewage systems of Tamoshan and Beverly Beach is, in our view, an extension or expansion of an urban governmental service. In addition, County's Plan would allow up to 100 additional residential hook-ups for individual homes that currently have on-site septic systems for the collection and dispersal of their household sewage. We have to assume that this potential enlargement of the LOTT system by 100 customers could become a reality. If County did this it would clearly be a significant extension or expansion of an urban governmental service. For these reasons, we conclude that the proposed sewer line does not escape RCW 36.70A.110(4)'s development restrictions under the guise of mere replacement of urban governmental services.
B. Is the Cooper Point peninsula a "rural" area for the purpose of RCW 36.70A.110(4)?
County contends, additionally, that RCW 36.70A.110(4)'s development restrictions do not prohibit the development of the proposed sewer line because the "record clearly shows that the area intended to benefit from the four inch, limited capacity sewer line is not rural in nature." Pet. for Review at 10. The thrust of County's argument on this point is that because Tamoshan and Beverly Beach are quasi-urbanized pre-GMA communities that are located in an area that has since been designated rural, the statute is inapplicable since it only has application to "governmental services ... in rural areas." RCW 36.70A.110(4). In support of its argument, County points out that although the Board applied RCW 36.70A.110(4)'s development restrictions, even it recognized that Tamoshan and Beverly Beach support "`urban densit[ies].'" Administrative Record (AR) at 949.
As we have observed above, County, in accord with the GMA's rural designation provision, RCW 36.70A.070(5), specifically designated the Cooper Point peninsula, including Tamoshan and Beverly Beach, as "rural" when drafting its comprehensive plan. AR at 463. Although we believe that this is telling evidence that the area is "rural" for purposes of the GMA, the record also establishes that "[f]uture land use [on Cooper Point] is anticipated to remain rural and residential in character." AR at 481. Indeed, the record shows that the nearest urban growth area (UGA)[5] is located significantly to the south of the area at issue and that there are no proposals to extend the UGA northward to include Cooper Point. It is also apparent from the record that the Cooper Point area has considerable open area where the natural vegetation has remained relatively undisturbed. This lack of encroachment on nature is a characteristic, according to the GMA, that is associated with a "rural" area where, among other things, "open space, the natural landscape, and vegetation predominate over the built environment." RCW 36.70A.030(14)(a). Because the Cooper Point area has characteristics consistent with the GMA's definition of "rural" and has been designated "rural" within County's comprehensive plan, we conclude that it is "rural" within the meaning of the GMA.
The record is sufficient, in sum, to show that the proposed sewer line constitutes an extension or an expansion of an urban governmental service into a rural area.

IV.
Having concluded that RCW 36.70A.110(4)'s restrictions on development are applicable to County's proposed sewer line, we must next determine whether County has shown that the Board erred in determining that the proposed sewer line is not necessary to protect basic public health and safety and the environment. As noted above, the Court of Appeals agreed with the Board's conclusion that the proposed sewer line was not necessary to protect health and safety *1162 and the environment. It did so based upon its conclusion that "the existing sewage treatment plant and homes served by septic systems are not currently experiencing waste discharge problems that threaten public health or the environment." Cooper Point Ass'n v. Thurston County, 108 Wash.App. 429, 441, 31 P.3d 28 (2001) (emphasis added), review granted, 145 Wash.2d 1033, 43 P.3d 20 (2002). In reaching that conclusion, the Court of Appeals noted that the dictionary defines the term "necessary" to mean "`INDISPENSABLE'" or "`[a]bsolutely required'" or "`[n]eeded to bring about a certain effect or result.'" Id. at 440, 31 P.3d 28 (quoting WEBSTER'S II NEW COLLEGE DICTIONARY 731 (1999)). County contends that we should interpret the term "necessary" in a less restrictive fashion taking into account the fact that the treatment plants and residences might experience wastewater management problems in the future that would jeopardize public health and safety and the environment.
Generally, the first step a court takes when reviewing the meaning of a statute is to look to the plain meaning of its terms. State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990). Under this approach, it is appropriate for a court to give, as did the Court of Appeals, a nontechnical statutory term its dictionary meaning. We have, however, recently indicated that the plain meaning of a statute may be "discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002). Under this approach, we construe the act as a whole giving effect to all of the language used. We stated that this "formulation of the plain meaning rule provides the better approach because it is more likely to carry out legislative intent." Id. at 11-12, 43 P.3d 4. County and amicus curiae, BIAW, urge us to review the meaning of the term "necessary" under the latter formulation of the plain meaning rule whereas the Respondents contend that it is sufficient to look to the dictionary to ascertain the meaning of the term.
Regardless of which formulation of the plain meaning rule we choose to apply, in this case it seems clear that a less restrictive interpretation of "necessary" is not sustainable. We say this because a more restrictive definition of "necessary" is consistent with the legislature's intent in enacting the GMA to protect the rural character of an area. See RCW 36.70A.070(5)(c)(i), (iii); see also King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 138 Wash.2d 161, 979 P.2d 374 (1999). In that regard, we find it significant that the GMA seeks to reduce "the inappropriate conversion of undeveloped land into sprawling, low-density development." RCW 36.70A.020(2). The provision at issue, which guards against the extension or expansion of urban governmental services into designated rural areas, is certainly consistent with that purpose. So also is the Board's conclusion that "[t]he Legislature has recognized that intrusion or extension of urban services to rural areas inevitably creates pressure to urbanize. That is the reason that the strict `necessary to protect' test was adopted rather than a `betterment of health or environment' standard." AR at 952.
Despite the concerns expressed by the legislature in the GMA to protect rural areas, County asks us to consider two statutory provisions which it asserts support a less restrictive definition of "necessary." It points out in this regard that "the legislature allows a county to designate areas of more intensive rural development and to provide the necessary /needed public facilities and services." Pet. for Review at 16 (emphasis added) (citing RCW 36.70A.070(5)(d)(iv)). This contention is problematic because County has not designated Tamoshan or Beverly Beach an area for more intense rural development under RCW 36.70A.070(5)(d). Indeed, County's comprehensive plan simply designates Tamoshan and Beverly Beach "rural" along with the rest of the areas in Cooper Point that are the subject of this appeal. Moreover, like RCW 36.70A.110(4), RCW 36.70A.070(5)(d)(iv), the provision cited by County allowing for more intensive rural development, requires a showing of necessity. Because that provision does not define "necessary" it is not helpful in ascertaining the meaning of that term.
*1163 The second provision which County asks us to consider, RCW 36.70A.3201, accords deference to a planning agency's decisions over how it plans for growth. Thus, County asserts that we should give a less restrictive reading to the term "necessary" in order to remain in harmony with the general intent to accord deference to planning agencies. This assertion is defeated by the fact that deference is only given to policy choices that are consistent with the goals and requirements of the GMA. In King County v. Central Puget Sound Growth Management Hearings Board, 142 Wash.2d 543, 561, 14 P.3d 133 (2000), we addressed a similar argument to that raised here and said that "[a]fter properly designating agricultural lands in the [comprehensive plan], County may not then undermine the [GMA's] agricultural conservation mandate by adopting ... amendments that allow ... an unrelated use." This case presents the same situation that we faced in King County because County is attempting to plan in a manner that is inconsistent with Cooper Point's "rural" designation. Here, we must be mindful of the fact that the legislature specifically defined an "[u]rban governmental service[ ]" to include "sanitary sewer systems." RCW 36.70A.030(19). We must also remember the legislative policy to reduce "the inappropriate conversion of undeveloped land into sprawling, low-density development" while "protect[ing] the rural character" of an area. RCW 36.70A.020(2),.070(5)(c). Because County's proposal does just what the GMA prohibitsextends an urban governmental service into a rural areathe Board was not required to accord deference to County to define the term "necessary."
Thus, we are not persuaded by County that the GMA, when read as a whole, supports a less restrictive definition of the term "necessary." As indicated above, County has not designated any of the area at issue in this case an area appropriate for more intense rural development. Similarly, we will not defer to County's interpretation of "necessary" since its proposal is inconsistent with the GMA. To the contrary, the Board concluded that the strict definition of "necessary" is required to carry out the legislature's intent. See AR at 952. Although we review questions of law de novo, we give substantial weight to the Board's interpretation of the statute that it administers. See Redmond, 136 Wash.2d at 46, 959 P.2d 1091. Indeed, "`[i]t is well settled that deference is appropriate where an administrative agency's construction of statutes is within the agency's field of expertise.'" Redmond, 136 Wash.2d at 61, 959 P.2d 1091 (Sanders, J., concurring) (quoting Chrysler Motors Corp. v. Flowers, 116 Wash.2d 208, 216, 803 P.2d 314 (1991); Green River Cmty. Coll. v. Higher Educ. Pers. Bd., 107 Wash.2d 427, 438, 730 P.2d 653 (1986)). Because the Board's determination is consistent with the legislative policy of the GMA to protect rural areas, we hold that the Board correctly interpreted the term "necessary" in a more restrictive fashion. Furthermore, as the Court of Appeals indicated, its interpretation of the term is consistent with the dictionary definition of that term. For those reasons, we will not disturb the Board's determination.

V.
Finally, we must determine whether the Respondents, other than the Board, are entitled to attorney fees pursuant to RCW 4.84.370. That statute provides that
costs shall be awarded to the prevailing party or substantially prevailing party on appeal before ... the supreme court of a decision by a county ... to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision.
RCW 4.84.370(1) (emphasis added). In support of their request for fees, the Respondents contend that the proposed sewer line "amounted to a spot rezone and was equivalent to a permit." Suppl. Br. of Resp't at 12. They do not, however, provide any authority for this proposition. The plain fact is that no development permit was at issue in this case. Because RCW 4.84.370 applies only to development permits involving site-specific determinations, the Respondents are not entitled to attorney fees under that statute.

*1164 VI.
For reasons stated above, we are satisfied with the Board's determination that County's proposal to extend a sewer line from an urban treatment plant to rural Cooper Point is subject to and violates the development restrictions imposed by RCW 36.70A.110(4). That being the case, we affirm the Court of Appeals' decision affirming the Western Washington Growth Management Hearings Board.
SMITH, JOHNSON, MADSEN, CHAMBERS and OWENS, JJ., concur.
SANDERS, J., dissenting.
In general, cities are the units of local government most appropriate to provide urban governmental services. In general, it is not appropriate that urban governmental services be extended to or expanded in rural areas except in those limited circumstances shown to be necessary to protect basic public health and safety and the environment and when such services are financially supportable at rural densities and do not permit urban development.
RCW 36.70A.110(4) (emphasis added).
Assuming the proposal involves urban governmental services to be extended or expanded in rural areas, the majority reads the term "necessary" to mean extending a sewer line, i.e., extension of a government service, would be permitted only if it were absolutely required, i.e., the only possible means of addressing a particular threat. Not surprisingly this reading dooms the proposed sewer. One can almost always imagine an alternative solution that would not involve expansion or extension of government services if considerations such as cost, other planning goals, and the interests of the community are deemed irrelevant by this court.
The majority claims its conclusion is required under the Growth Management Act (GMA) because the legislature's intent was to protect the rural character of an area and because its reading is required by the common dictionary definition. Majority at 1163-1164. But the majority's analysis is incomplete because it ignores the overall structure of the GMA, and it is wrong because it looks to 1 GMA planning goal while ignoring 12 others, failing to account for the GMA's clear mandate that cities and counties are to make planning decisionsnot the boards (in this case the Western Washington Growth Management Hearings Board).
To properly apply RCW 36.70A.110(4) we must be guided by legislative intent as expressed in the language of the GMA. Dep't of Licensing v. Cannon, 147 Wash.2d 41, 57, 50 P.3d 627 (2002); Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). All of the GMA provisions must be considered in their relation to one another, and, if possible, they must be harmonized to ensure proper construction of each provision. City of Seattle v. Fontanilla, 128 Wash.2d 492, 498, 909 P.2d 1294 (1996).
Although "necessary" may sometimes mean "absolutely required" this is not the only meaning recognized by the law. As Black's explains: necessary
must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought ... its force and meaning must be determined with relation to the particular object sought.

BLACK'S LAW DICTIONARY 1029 (6th ed.1990).
The majority's approach tells cities and counties that extension or expansion of government services into a rural area may never occur unless there is absolutely no other way to protect public health, safety, and the environment. This is not consistent with the GMA. The GMA is structured as a complex mélange of planning goals, 13 in all, which must be balanced and harmonized with one another. The balancing and harmonizing is left not to the growth management hearings boards but to cities and counties. RCW 36.70A.3201. By setting preservation of rural areas as an absolute requirement, the majority renders RCW 36.70A.110(4) inconsistent with the GMA's harmonizing approach.
The GMA recognizes 13 planning goals which are not ranked in priority, are not meant to be exclusive, and are permitted to be given varying degrees of emphasis by local planners. RCW 36.70A.020; WAC 365-195-070(1). *1165 A number of goals would be furthered by installing the four-inch sewer line to replace the existing obsolete treatment facilities before they fail and spill pollution into Puget Sound. Among the planning goals recognized under the GMA which might easily be served by installation of the new sewer line would be protecting private property values along the shore, conserving fish and wildlife habitat, and protecting the environment and water quality. See RCW 36.70A.020. Thus, a four-inch sewer line advances various planning goals in the context of addressing a serious threat to public health, safety, and the environment.
Reasonable people could certainly argue over which planning goals should be given priority in any given situation, but the legislature did not choose to prioritize the goals, and clearly there will be times when furthering one goal will conflict with furthering another goal. See Richard L. Settle, Washington's Growth Management Revolution Goes to Court, 23 Seattle U.L.Rev. 5, 11 (1999). The legislature could have given responsibility for balancing these goals to the growth management hearings boards, but it clearly assigned responsibility for balancing priorities and harmonizing planning goals to the counties and cities:
In recognition of the broad range of discretion that may be exercised by counties and cities consistent with the requirements of this chapter, the legislature intends for the boards to grant deference to counties and cities in how they plan for growth, consistent with the requirements and goals of this chapter. Local comprehensive plans and development regulations require counties and cities to balance priorities and options for action in full consideration of local circumstances. The legislature finds that while this chapter requires local planning to take place within a framework of state goals and requirements, the ultimate burden and responsibility for planning, harmonizing the planning goals of this chapter, and implementing a county's or city's future rests with that community.
RCW 36.70A.3201.
This statement of intent is further fortified by several other provisions of the GMA. Plans, regulations and amendments adopted under the GMA are presumed valid upon adoption. RCW 36.70A.320. Decisions must be upheld by the board unless it "determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of this chapter." RCW 36.70A.320(3). When weighing evidence, the board must "apply a more deferential standard of review to actions of counties and cities than the preponderance of the evidence standard provided for under existing law." RCW 36.70A.3201.
Thus, the GMA informs us that the legislature intended cities and counties to be the primary decision makers, to balance and harmonize the planning goals established under the GMA, and that the growth management hearings boards are to defer to these decisions unless they are clearly erroneous. "Clearly erroneous" means that after reviewing the record as a whole, the court is left with the definite and firm conviction that a mistake has been made. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000). An absolutist meaning for "necessary" is not consistent with these mandates. A reading which more nearly effectuates the structure of the GMA is one which defines "necessary" to denote "convenient, useful, appropriate, suitable, proper, or conducive to the end sought" rather than "absolutely required." Such a reading gives cities and counties a freer hand to perform their balancing and harmonizing roles under the GMA, allowing them to best judge how to protect the public health, safety, and the environment, while leaving unchanged the board's role to ensure compliance with the overall goals and requirements of the GMA. The majority's decision erroneously shifts power from cities and counties to the growth management hearings boards. It handcuffs local governments that attempt to discharge their planning responsibility to manage growth and address the pressing needs of their communities.
I dissent.
IRELAND and BRIDGE, JJ., concur.
NOTES
[1] Former RCW 36.70A.040(1) (1993) provided, in part, that "[e]ach county that has both a population of fifty thousand or more and has had its population increase by more than ten percent in the previous ten years ... shall ... adopt[ ] comprehensive land use plans and development regulations under this chapter."
[2] The Board has been designated as a party to the appeal as its decision is the subject of review. The Board has not, however, presented a brief or participated in the oral arguments presented to this court.
[3] The Respondents have not assigned error to the Board's determination that the proposed sewer line complied with SEPA requirements. Consequently, that issue was not before the Court of Appeals nor is it before this court.
[4] RCW 36.70A.030(19) specifically indicates that a "sanitary sewer system[ ]" is an urban governmental service.
[5] RCW 36.70A.110(1) provides, in relevant part, that "[e]ach county that is required or chooses to plan under RCW 36.70A.040 shall designate an urban growth area or areas within which urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature."