# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FUTUREWISE and PILCHUCK AUDUBON SOCIETY,<br><br>Appellants,<br><br>v.<br><br>SNOHOMISH COUNTY and THE GROWTH MANAGEMENT HEARINGS BOARD,<br><br>Respondents. | DIVISION ONE<br><br>No. 79663-1-I<br><br>OPINION PUBLISHED IN PART<br><br>FILED: July 15, 2019 |

DWYER, J. — Following the 2014 Oso landslide, Snohomish County updated its regulations designating and protecting critical areas, including geologically hazardous areas (GHAs) such as landslide hazard areas. Futurewise and the Pilchuck Audubon Society (collectively Futurewise) believe that the County's regulations fail to meet the requirements of the Growth Management Act (GMA), codified primarily in chapter 36.70A RCW. Futurewise challenged the County's new regulations before the Growth Management Hearings Board, but the Board concluded that the majority of the regulations complied with the GMA. On appeal, Futurewise seeks reversal of the Board's decision to uphold the regulations.

Futurewise asserts that the County's new regulations fail to protect the public health and safety from GHAs as required by the GMA and that the Board erred when it concluded that Futurewise presented inadequate briefing on certain

issues and deemed those issues abandoned. We disagree. The GMA does not mandate that local governments consider the protection of the public health and safety when developing critical area regulations, and the Board did not err when it concluded that Futurewise had abandoned several issues by presenting inadequate briefing to the Board.[1] We affirm.

I

Following the Oso landslide in 2014, the Snohomish County Council adopted Amended Ordinance 15-034 (Ordinance 15-034) on September 2, 2015, updating its critical area regulations. The Ordinance amended sections of the Snohomish County Code (SCC) pertaining to wetlands and fish and wildlife habitat conservation areas (chapter 30.62A SCC), geologically hazardous areas (chapter 30.62B SCC), and critical aquifer recharge areas (CARAs) (chapter 30.62C SCC).

Futurewise and the Tulalip Tribes challenged Ordinance 15-034 and the amended regulations protecting critical areas before the Board. The Board subsequently concluded that Futurewise and the Tulalip Tribes failed to meet their burden to establish the invalidity of the challenged regulations except as to one issue not pertinent to this appeal.[2] Most pertinent to this appeal are the Board's conclusions that (1) the GMA does not mandate that the County consider the public health and safety when developing critical area regulations, and (2) that Futurewise abandoned all issues set forth under "Issue C-1" in its briefing

---

[1] In the unpublished portion of this opinion we address several additional assignments of error presented by Futurewise, none of which merit appellate relief.
[2] The Tulalip Tribes are not a party to this appeal.

2

before the Board because it presented inadequate argument linking the County's regulations to specific violations of the GMA. After the Board reached its decision, Futurewise appealed to the Thurston County Superior Court, which affirmed the Board's decision in a brief order.

Futurewise timely appealed to Division Two, which transferred the matter to us for decision.

II

Futurewise's primary contention on appeal is that the Board erred by concluding that the GMA does not require local governments to consider the protection, against GHAs, of the public health and safety when developing critical area regulations. This is so, Futurewise asserts, because RCW 36.70A.030(10) defines GHAs as "areas that because of their susceptibility to erosion, sliding, earthquake, or other geological events, are not suited to the siting of commercial, residential, or industrial development consistent with public health or safety concerns." According to Futurewise, the Board's conclusion that the GMA does not require local governments to consider the protection of the public health and safety during the development of critical area regulations improperly writes "consistent with public health or safety concerns" out of the statutory definition of GHAs.

In response, the County asserts that RCW 36.70A.030(10) does not set forth any affirmative mandate to consider the public health and safety during the development of critical area regulations. Instead, the County asserts that RCW 36.70A.172(1) sets forth the requirements for counties and cities when

3

developing regulations and that this statute does not require consideration of the public health and safety. The County has the better argument.

A

Our review of decisions by the Growth Management Hearings Board is governed by the Washington Administrative Procedure Act, chapter 34.05 RCW (APA). Kittitas County v. E. Wash. Growth Mgmt. Hearings Bd., 172 Wn.2d 144, 155, 256 P.3d 1193 (2011). We review the Board's decision directly, rather than reviewing the decision of the superior court. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wn.2d 543, 553, 14 P.3d 133 (2000). "Under the judicial review provision of the APA, the 'burden of demonstrating the invalidity of [the Board's decision] is on the party asserting invalidity.'" Thurston County v. Cooper Point Ass'n, 148 Wn.2d 1, 7-8, 57 P.3d 1156 (2002) (alteration in original) (quoting RCW 34.05.570(1)(a)).

We review issues of law de novo. Thurston County v. W. Wash. Growth Mgmt. Hearings Bd., 164 Wn.2d 329, 341, 190 P.3d 38 (2008). We accord substantial weight to the Board's interpretation of the GMA, but we are not bound by the Board's interpretations. Thurston County, 164 Wn.2d at 341. Any deference we show to the Board's interpretations, however, is superseded by the deference both we and the Board must show to county planning actions. Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 154 Wn.2d 224, 238, 110 P.3d 1132 (2005). Additionally, we will not defer to the Board's interpretations of the GMA where the Board's interpretation expands the scope of

4

its own authority. See Ma'ae v. Dep't of Labor & Indus., 8 Wn. App. 2d 189, 197, 438 P.3d 148 (2019).

The Board's decision must be supported by substantial evidence, which requires that there be "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" Kittitas County, 172 Wn.2d at 155 (internal quotation marks omitted) (quoting Thurston County, 164 Wn.2d at 341). "On mixed questions of law and fact, we determine the law independently, then apply it to the facts as found" by the Board. Cooper Point Ass'n, 148 Wn.2d at 8 (citing Hamel v. Emp't Sec. Dep't, 93 Wn. App. 140, 145, 966 P.2d 1282 (1998)).

"A county has broad discretion under the GMA in creating development regulations tailored to local circumstances." Yakima County v. E. Wash. Growth Mgmt. Hearings Bd., 168 Wn. App. 680, 691, 279 P.3d 434 (2012) (citing Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hearings Bd., 161 Wn.2d 415, 430, 166 P.3d 1198 (2007)). When a party challenges a county's regulations under the GMA, the Board must find compliance unless the challenged regulations are clearly erroneous in view of the entire record and the goals and requirements of the GMA. Lewis County v. W. Wash. Growth Mgmt. Hearings Bd., 157 Wn.2d 488, 497, 139 P.3d 1096 (2006) (citing RCW 36.70A.320(3)). "To find an action 'clearly erroneous,' the Board must have a 'firm and definite conviction that a mistake has been committed.'" Lewis County, 157 Wn.2d at 497 (citing Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson

County, 121 Wn.2d 179, 201, 849 P.2d 646 (1993), aff'd, 511 U.S. 700, 114 S. Ct. 1900, 128 L. Ed. 2d 716 (1994)).

B

Futurewise contends that several of the County's updated critical area regulations do not comply with the GMA because they were developed without considering the protection of the public health and safety from critical areas. But Futurewise fails to identify any provision of the GMA that sets forth such a requirement. Instead, Futurewise asserts that by failing to consider the public health and safety when developing critical area regulations, the County ignored the definition of GHAs set forth in RCW 36.70A.030(10)—which specifies that GHAs are areas "not suited to the siting of commercial, residential, or industrial development consistent with public health or safety concerns." According to Futurewise, this definition requires the County to consider the protection of the public health and safety from GHAs when developing critical area regulations.

Local governments subject to the GMA are required to "adopt development regulations that protect critical areas" designated under RCW 36.70A.170. RCW 36.70A.060(2). The GMA further specifies that "[i]n designating and protecting critical areas under this chapter, counties and cities shall include the best available science in developing policies and development regulations to protect the functions and values of critical areas." RCW 36.70A.172(1). This provision sets forth the affirmative obligation the GMA places on counties developing critical area regulations to protect critical areas' "functions and values," and it does not include any requirement that counties

6

consider the public health and safety when developing critical area regulations.[3] Indeed, when interpreting the requirements of RCW 36.70A.172(1), our Supreme Court has analyzed the statute as requiring the protection of critical areas themselves, rather than anything external to critical areas, such as the public health or safety. See Swinomish, 161 Wn.2d at 427-28 (concluding that a no harm regulation setting the baseline for measuring harm as the current condition of critical areas complied with the GMA because the word protect in RCW 36.70A.172 required only the prevention of further harm to critical areas, rather than the enhancement of already damaged critical areas).[4]

Furthermore, Futurewise's argument ignores longstanding Board precedent establishing that GMA definitions do not, by themselves, create any GMA duties. Hanson v. King County, No. 98-3-0015c, 1998 WL 990439, at *6-7 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Dec. 16, 1998) (Final Decision and Order). In fact, the Board has previously applied this general rule specifically to determine that the GMA does not require local government entities to consider the public health and safety when developing critical area regulations.[5] Audubon Soc'y v. Pierce County, No. 05-3-0004c, 2005 WL

---

[3] Futurewise appears to also assert that RCW 36.70A.060 sets forth broader requirements than RCW 36.70A.172(1), and that it required the County to consider public health and safety when developing GHA regulations. Futurewise points to no authority to support such an assertion, and RCW 36.70A.060 does not set forth any requirement that local government entities consider the public health and safety while developing critical area regulations.

[4] The Swinomish court was not asked to determine whether consideration of the protection of the public health and safety was required by the GMA, but it was asked to determine the meaning of "protect" as used in RCW 36.70A.172, and concluded that it required local government regulations to prevent new harm from coming to critical areas. 161 Wn.2d at 429-30.

[5] Futurewise urges us to ignore these decisions and to instead apply the reasoning from Honesty in Envtl. Analysis & Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 96 Wn. App. 522, 979 P.2d 864 (1999) and from Olympic Stewardship Found. v. W. Wash. Growth Mgmt. Hearings Bd., 166 Wn. App. 172, 274 P.3d 1040 (2012). But these decisions are

2227915, at *21 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. July 12, 2005) (Final Decision and Order).

In Audubon Society, the Board analyzed the duties set forth in the GMA related to critical area regulations and concluded that the definition of GHAs set forth in RCW 36.70A.030 does not contain any affirmative mandate requiring counties to consider the public health and safety when developing critical area regulations. The Board acknowledged that the GMA defined GHAs as areas that "'are not suited to [the] siting of . . . development consistent with public health or safety concerns,'" but concluded that "there is *no affirmative mandate* associated with this definition" except that set forth in RCW 36.70A.172 to protect the functions and values of critical areas.[6] Audubon Soc'y, 2005 WL 2227915, at *21 (quoting RCW 36.70A.030(10)). The Board therein also noted that, under Board precedent, GMA definitions, by themselves, do not create any GMA duties. Audubon Soc'y, 2005 WL 2227915, at *21 n.18 (citing Hanson, 1998 WL 990439, at *7-8).

Numerous subsequent Board decisions have analyzed whether the GMA sets forth a duty to protect people and property during the development of critical area regulations, and they have consistently held that the GMA does not require critical area regulations to protect the public health and safety from GHAs. See

___

not on point. Neither of these decisions analyzes whether the GMA requires local governments to consider the public health and safety when developing critical area regulations.

[6] As the County notes in its briefing, this does not mean that the public is unprotected from GHAs. Building codes and other similar regulatory schemes within the province of state and local elected officials provide the public with protection against personal and property damage from GHAs. See Seattle Audubon Soc'y v. City of Seattle, No. 06-3-0024, 2006 WL 3791721, at *16 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Dec. 11, 2006) (Final Decision and Order) (concluding that people and property must be protected against GHAs through building codes, not the GMA).

Blair v. City of Monroe, No. 14-3-0006c, 2015 WL 10684571, at *29 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. April 1, 2015) (Order Finding Continuing Non-Compliance) ("risk to life and property in geologically hazardous areas is a policy decision"); Friends of the San Juans v. San Juan County, No. 13-2-0012c, 2013 WL 5212385, at *22 (W. Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Sept. 6, 2013) (Final Decision and Order) ("The GMA does not impose an independent duty to protect life and property."); Friends of Pierce County v. Pierce County, No. 12-3-0002c, 2012 WL 3060647, at *53 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. July 9, 2012) (Final Decision and Order) (the GMA definition of GHAs "by itself does not impose an independent duty upon the County to protect life and property"); Seattle Audubon Soc'y v. City of Seattle, No. 06-3-0024, 2006 WL 3791721, at *16 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Dec. 11, 2006) (Final Decision and Order) (concluding that people and property must be protected against GHAs through building codes, not the GMA).[7]

---

[7] Futurewise did not, in its opening brief, acknowledge the existence of any of these prior decisions analyzing whether the GMA required counties to consider public health and safety while developing GHA regulations. Instead, it cited to Dep't of Ecology v. City of Kent, No. 05-3-0034, 2006 WL 1111353 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. April 19, 2006) (Final Decision and Order) asserting that the case's holding—that a GMA definition has substantive effect in identifying wetland critical areas requiring designation and protection—means that the definition in RCW 36.70A.030(10) is a mandate to protect people and property from GHAs. Br. of Appellant at 18. But that case directly states "that GMA definitions do not, in themselves, create enforceable obligations." City of Kent, 2006 WL 1111353, at *21. It further notes that the enforceable obligation is the duty to designate and protect wetland critical areas. It does not say that the definition of wetlands itself creates that obligation but, rather, that the definition explains which wetlands the duty applies to. City of Kent, 2006 WL 1111353, at *21. Similarly, RCW 36.70A.030(10), setting forth the definition of GHAs, explicates the scope of areas to which the duty set forth in RCW 36.70A.172—to protect the functions and values of critical areas—attaches. It does not independently set forth any duty.

Futurewise does, belatedly, address these Board decisions in its reply brief. But we reject Futurewise's attempts to distinguish these Board decisions from the present case. All of Futurewise's attempts to distinguish these cases fail to address the holding that Futurewise seeks

We decline to overturn over 20 years of Board precedent holding that GMA definitions do not, by themselves, create GMA duties, and almost 15 years of Board precedent holding that the GMA imposes no duty on local governments to consider the public health and safety when developing regulations to protect critical areas, including GHAs. The Board's interpretation aligns with the plain language of RCW 36.70A.172 and our Supreme Court's consideration, in Swinomish, of RCW 36.70A.172 as requiring protection of critical areas. 161 Wn.2d at 427-28. Furthermore, deference to the Board's interpretation of the GMA is appropriate herein because the Board is interpreting a statute it administers within its administrative expertise and its interpretation restrains, rather than expands, the scope of its own authority to overrule decisions made by elected county and city officials. Port of Seattle v. Pollution Control Hearings Bd., 151 Wn.2d 568, 612, 90 P.3d 659 (2004); Ma'ae, 8 Wn. App. 2d at 197.

Finally, we note that our legislature has also tacitly acquiesced to the Board's interpretation of the GMA. The Board's decisions concluding that GMA definitions do not, on their own, create GMA duties, extend back over 20 years, and decisions concluding specifically that no definition in the GMA sets forth a duty to consider the public health and safety when developing critical area regulations extend back almost 15 years.[8] See Hanson, 1998 WL 990439, at *7-

---

to escape: that the GMA does not mandate consideration of the public health and safety during the development of critical area regulations.

[8] In a statement of additional authorities, Futurewise cites to Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County, 135 Wn.2d 542, 566, 958 P.2d 962 (1998) as pertaining to whether the legislature has acquiesced to the Board's rulings. Skagit Surveyors, however, is distinguishable from the present matter.

Therein, the court explained that legislative acquiescence may not be presumed from the failure to amend a statute "where the administrative interpretation is not by regulation or rule but is, instead, included in a ruling in a contested case and where the interpretation is not consistent

8; Audubon Soc'y, 2005 WL 2227915, at *21. The Washington State Legislature has amended the GMA, including RCW 36.70A.172 and RCW 36.70A.030, several times during this period without disavowing the Board's rulings. See LAWS OF 2017, 3d Spec. Sess., ch. 18, § 2; LAWS OF 2012, ch. 21, § 1; LAWS OF 2010, ch. 211, § 3; LAWS OF 2009, ch. 565, § 22; LAWS OF 2005, ch. 423, § 2.

The plain language of the GMA, interpretations of the GMA by our Supreme Court, and over a decade of Board decisions—with clear accompanying legislative acquiescence to those decisions—strongly support the Board's conclusion herein that the GMA does not impose a duty on local governments to consider the public health and safety when developing regulations to protect critical areas. The Board did not err by so holding.

III

Futurewise next contends that the Board erred by concluding that Futurewise inadequately briefed Issue C-1 in its briefing before the Board and, thus, abandoned Issue C-1. This is so, Futurewise asserts, because its briefing adequately cited provisions of the GMA alleged to be violated in its issue heading and cited to prior Board decisions and orders in its argument under that heading. We disagree.

---

within the tribunals charged with hearing petitions under the statute." Skagit Surveyors, 135 Wn.2d at 566. In written decisions, the three Growth Management Hearing Boards interpreted the provision of the GMA at issue in Skagit Surveyors differently. 135 Wn.2d at 566. Therefore, assuming silent legislative acquiescence to any one of the different Boards' interpretations was inappropriate. But that is not the situation presented herein. There are not inconsistent rulings from different Boards about whether GMA definitions set forth any duties under the GMA. Thus, the legislature's failure to amend the GMA may be viewed as evidence of acquiescence to the interpretation set forth in Board rulings.

RCW 36.70A.270(7) authorizes the Board to adopt its own general procedural rules.[9] The Board has done so, and its procedural rules are set forth in chapter 242-03 WAC. WAC 242-03-590 sets forth the following pertinent requirements for briefs presented to the Board:

> (1) A petitioner, or a moving party when a motion has been filed, shall submit a brief addressing each legal issue it expects the board to determine. Failure by such a party to brief an issue shall constitute abandonment of the unbriefed issue. Briefs shall enumerate and set forth the legal issue(s) as specified in the prehearing order.

The Board has further clarified that an issue is briefed only when "legal argument is provided; it is not sufficient for a petitioner to make conclusory statements, without explaining how, as the law applies to the facts before the Board, a local government has failed to comply with the [GMA]." Tulalip Tribes of Wash. v. Snohomish County, No. 96-3-0029, 1997 WL 29145, at *4 n.1 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Jan. 8, 1997) (Final Decision and Order). Furthermore, the Board has also explained that a party's inadequately briefed issues are treated the same as unbriefed issues when the briefing provides "insufficient supporting facts and legal arguments" to satisfy the party's burden of proof. Finis Gerald Tupper v. City of Edmonds, No. 03-3-0018, 2004 WL 3275211, at *5 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. March 22, 2004) (Final Decision and Order).

---

[9] "All proceedings before the board, any of its members, or a hearing examiner appointed by the board shall be conducted in accordance with such administrative rules of practice and procedure as the board prescribes." RCW 36.70A.270(7). "Unless otherwise specified in the GMA, the Washington Administrative Procedure Act (APA) chapter 34.05 RCW, governs the practice and procedure of the board." Stafne v. Snohomish County, 174 Wn.2d 24, 32, 271 P.3d 868 (2012) (citing RCW 36.70A.270(7)).

12

Futurewise does not challenge the validity of the Board's procedural rules but, rather, challenges the Board's finding that Futurewise's briefing on Issue C-1 failed to provide the necessary links between the challenged code sections referenced in Issue C-1 and the GMA. Therefore, we must determine whether the Board's finding—that Futurewise's briefing did not include links between the challenged code sections and the GMA—is supported by substantial evidence, which requires that there be "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" Kittitas County, 172 Wn.2d at 155 (internal quotation marks omitted) (quoting Thurston County, 164 Wn.2d at 341).

The Board explained its finding that Futurewise had not provided sufficient argument connecting challenged code sections in Issue C-1 to the GMA with the following rationale:

> Here, Futurewise-Pilchuck failed to cite any GMA requirement supposedly violated by the County's geologically hazardous area regulations listed in Issue C-1. It is incumbent upon a petitioner to relate an adopted regulation to a specific GMA statute/requirement and provide argument establishing that the provision violates the statute/requirement. That was not done here. Rather, the petitioners' brief includes statements such as the regulation ". . . fails to protect development from landslides as the GMA commands", ". . . these sections violate the GMA for the same reasons . . .", and "are not supported by the scientific evidence".

(Alterations in original.)

The Board's description of Futurewise's briefing on Issue C-1 is accurate. Futurewise did not cite to any provisions of the GMA in its briefing before the Board for Issue C-1. While Futurewise included numerous citations to GMA provisions in its heading for Issue C, its briefing for Issue C-1 failed to connect

13

any of the challenged code sections addressed in Issue C-1 to a violation of any of the sections of the GMA listed in the heading for Issue C. Instead, Futurewise made the general conclusory assertions identified in the Board's decision, such as, "these sections violate the GMA." Not once in Futurewise's briefing on Issue C-1 did Futurewise attempt to link any of the challenged code sections discussed therein to any particular provision of the GMA, whether included in Issue C's heading or otherwise. The record therefore supports the Board's finding that Futurewise failed to provide the necessary legal argument connecting challenged code sections to violations of a provision of the GMA, and thus supports the Board's ruling that Futurewise abandoned Issue C-1.

We affirm the Board's decision that the GMA does not require the County to consider the protection of the public health and safety when developing critical area regulations and that Futurewise abandoned the issues presented in Issue C-1 in its briefing before the Board.

The remainder of this opinion has no precedential value. It will, therefore, be filed for public record in accordance with the rules governing unpublished opinions.

IV

We now address Futurewise's remaining contentions, none of which merit appellate relief.

A

Futurewise next contends that the Board failed to rule on a motion Futurewise brought to supplement the record with an additional article with

14

supporting data (the "LaHusen article") and that such failure requires us to remand the matter to the Board for resolution. This is so, Futurewise asserts, because RCW 34.05.570(3)(f) requires that we grant relief from agency orders in situations in which the agency has not decided all issues requiring resolution by the agency.

Although Futurewise correctly quotes the rule set forth in RCW 34.05.570(3)(f),[10] Futurewise makes no attempt to explain why resolution of its motion was required, as mandated by that section. Futurewise does not present any argument that resolution of its motion would, in any way, affect the Board's ruling on the validity of the challenged code sections.

Furthermore, even if Futurewise had presented any such argument in its briefing, it is simply incorrect that the Board never ruled on its motion. Despite being titled "Deferring Decision on Motion For Supplementation," the Board's order is clear that the deferral was a general denial that offered the opportunity for further argument if certain conditions were met. Specifically, the Board noted that "[i]f, after reviewing the record and argument submitted by the parties in their opening briefs, the Board wishes to consider the LaHusen material for any purpose, the presiding officer will request additional directed briefing by both parties and argument at the hearing on the merits." In other words, the Board's decision not to request additional briefing and argument did not indicate that it

---

[10] Subsection (3)(f) states that courts will grant relief from agency orders if "[t]he agency has not decided all issues *requiring resolution* by the agency." (Emphasis added.)

failed to resolve the motion but, rather, indicated that it did not wish to consider the LaHusen article presented by Futurewise.[11]

B

Futurewise next contends that the Board erred in footnote 85 of its final decision and order when it found that there was "no disagreement with the fact the County has designated landslide hazard areas." This is so, Futurewise asserts, because it did argue before the Board that "Snohomish County did not properly designated geologically hazardous areas." Br. of Appellant at 13.

This argument fails for several reasons. First, the argument is facially flawed; arguing that the County made improper designations is not the same as arguing that it made no designations. Second, the record shows that Futurewise did not argue before the Board that the County had made no designations. Third, even if Futurewise had argued that the County failed to designate GHAs, footnote 85 is clearly dicta because the section it is taken from in the Board's final decision and order pertains to an issue unrelated to the designation requirement set forth in RCW 36.70A.170. Finally, Futurewise did not present any argument that reversal of footnote 85 would have an impact on the Board's conclusion that the County's regulations comply with the GMA.

---

[11] Such a decision by the Board is understandable given that the LaHusen article Futurewise sought to add to the record was not available to the County at the time it developed and implemented its new regulations. Information unavailable to a local governmental entity until after it has adopted challenged regulations is only rarely admitted, and only on a showing of "the necessity of such evidence to the board's decision concerning invalidity." WAC 242-03-565(2). See also Blair v. City of Monroe, No. 14-3-0006c, 2014 WL 2624391, at *7 (Wash. Cent. Puget Sound Growth Mgmt. Hr'gs Bd. May 23, 2014) (Order on City's Dispositive Motion and Petitioner's Motion to Supplement) ("While the Board is extremely sensitive to the now-heightened concerns related to unstable slopes, it is nevertheless inappropriate to supplement the record with specific materials that could not have been considered by the City prior to the enactment of the challenged ordinance.").

16

C

Futurewise next contends that the trial court erred when it concluded that "the top of slope and toe of slope areas were buffers, rather than geologically hazardous areas." Br. of Appellant at 16.

This argument fails for two reasons. First, citing to the County's amended definition of landslide hazard areas, SCC 30.91L.040, the Board stated only that "[l]andslide hazard areas are defined to not only include the potential slide area itself but also 'buffer' areas." This is an accurate description by the Board of the County's regulation,[12] and it plainly does not state that the top of slope and toe of slope areas are not part of landslide GHAs. In fact, it states the opposite, that "buffer" areas, such as the top of slope and toe of slope areas are included in the definition of landslide hazard areas under the County's regulations. Second, even if, somehow, the Board's use of the term "buffer" was improper, as opposed to merely shorthand, Futurewise did not present any argument that reversal of the Board's use of the term "buffer" would have any effect on the Board's conclusion that the County's updated critical area regulations comply with the GMA.

D

Futurewise next contends that the Board erred when it concluded that numerous challenged provisions of the SCC comply with the GMA. Specifically,

---

[12] That section states that "the landslide hazard area also includes lands within a distance from the top of the slope equal to the height of the slope or within a distance of the toe of the slope equal to two times the height of the slope." SCC 30.91L.040. The shorthand use of the word "buffer" to describe the top of slope and toe of slope areas included in the landslide hazard area did not take those areas outside of the definition of landslide hazard area under the regulation.

17

Futurewise asserts that SCC 30.62A.130, SCC 30.62B.390, SCC 30.62C.130, and SCC 30.62C.140(3)(f)(iv) do not comply with the GMA.[13] We address each challenged section separately and conclude that none of Futurewise's challenges merit appellate relief.

First, the Board found that SCC 30.62A.130 was not "amended in any relevant, substantive manner" by Ordinance 15-034 and concluded that "challenges are thus time barred."[14] Futurewise does not challenge the Board's finding or conclusion on appeal.[15] Thus, we accept the Board's finding and conclusion that challenges to SCC 30.62A.130 are time barred and decline to consider Futurewise's arguments addressing SCC 30.62A.130 on the merits.

Second, Futurewise asserts that SCC 30.62B.390 violates the GMA because it grants the county planning and development services director discretionary authority to expand GHA boundaries. This is so, Futurewise asserts, because the discretionary nature of that authority conflicts with the requirement in RCW 36.70A.170(1) that the County designate critical areas. But SCC 30.62B.390 authorizes the director to expand the boundaries of *already designated critical areas*. Thus, SCC 30.62B.390 operates as an additional protection after the GMA requirement to designate and protect critical areas has already been satisfied.

---

[13] Futurewise also asserts that SCC 30.62B.130, SCC 30.62B.140, SCC 30.62B.340, and SCC 30.91L.040 do not comply with the GMA. But Futurewise presented its challenge to these code sections to the Board only in Issue C-1, which the Board concluded was abandoned. We therefore decline to further consider Futurewise's challenge to these code sections.

[14] RCW 36.70A.290(2) requires that petitions relating to whether a development regulation is in compliance with the goals and requirements of the GMA be filed within 60 days after publication of the regulation.

[15] In fact, in its briefing Futurewise never even acknowledges that the Board concluded that its challenge to SCC 30.62A.130 was time barred.

Third, Futurewise failed to preserve its right to challenge SCC 30.62C.130 on appeal. Futurewise's briefing before the superior court did not include any reference to SCC 30.62C.130, and thus Futurewise failed to preserve the issue for appeal. See State v. Chacon, 192 Wn.2d 545, 547, 431 P.3d 477 (2018) ("Ordinarily, we do not consider unpreserved errors raised for the first time on review."). Even if Futurewise had presented a challenge to SCC 30.62C.130 to the superior court, it also failed to include its challenge to SCC 30.62C.130 in its assignments of error on appeal. We will "review only a claimed error that is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." Phillips v. Greco, 7 Wn. App. 2d 1, 9, 433 P.3d 509 (2018). Therefore, we decline to consider Futurewise's challenge to SCC 30.62C.130.

Fourth, Futurewise bases its challenge to SCC 30.62C.140(3)(f)(iv) on building code statutes pertaining to requirements for applications for building permits and subdivisions, not GMA requirements pertaining to critical area regulations. To support its assertion that SCC 30.62C.140(3)(f)(iv) violates the GMA, Futurewise cites to RCW 19.27.097, which requires applicants for building permits for buildings requiring potable water to provide evidence of a physically and legally available water supply, and RCW 58.17.110, which requires the same for applications for subdivisions. Neither of these provisions address critical area regulations, nor do any of the cases Futurewise cites in support of its claim of error.

Futurewise seeks to apply laws governing applications for building permits and subdivision applications to code sections intended to designate and protect

19

CARAs as critical areas. As noted by the Board, "[w]hile local jurisdictions are now required to address both the legal and actual availability of water for development activity, inclusion of such a requirement within the hydrogeologic report section of the Snohomish County Code protecting CARAs makes little sense." The challenged code section is intended to designate and protect CARAs, not to address the availability of water for development activity, and Futurewise has not established that SCC 30.62C.140(3)(f)(iv) violates any provision of the GMA.

E

Finally, Futurewise asserts that the interests of justice require us to remand to the Board consideration of the County's amended CARA regulations in light of recently enacted legislation, specifically LAWS OF 2018, ch. 1. We disagree.

> RCW 34.05.554(1)(d) permits a party to raise a new issue on appeal if "[t]he interests of justice would be served by resolution of an issue arising from . . . (i) A change in controlling law occurring after the agency action." The remedy is to remand to the agency for determination. RCW 34.05.554(2).

Olympic Stewardship Found. v. W. Wash. Growth Mgmt. Hearings Bd., 166 Wn. App. 172, 200, 274 P.3d 1040 (2012) (footnote omitted) (alteration in original).

In 2018, the legislature enacted Engrossed Substitute Senate Bill (ESSB) 6091, LAWS OF 2018, ch. 1, entitled "Water Availability." ESSB 6091 made numerous changes to the GMA to ensure water availability for development. See LAWS OF 2018, ch. 1, at 1. The law primarily adjusted requirements for

20

subdivision and building permit applications. It did not modify the statutory requirements regarding regulations intended to protect CARAs as critical areas.

We reject Futurewise's assertion that we must remand consideration of the County's CARA critical area regulations based on ESSB 6091 because ESSB 6091 has no impact on the analysis of the County's CARA critical area regulations.[16] It pertains to issues of water availability for development, not to the protection of CARAs as critical areas. The new law has nothing to do with the challenged sections of the SCC addressing the protection of CARAs as critical areas.[17]

Affirmed.

WE CONCUR:

---

[16] The terms "critical area" and "critical aquifer recharge area" do not appear even once in the text of the legislation.

[17] Even if it did have an impact and the challenged code provisions were in violation of the new law, the legislation was not made retroactive. LAWS OF 2018, ch. 1, § 307. Thus, pursuant to RCW 36.70A.130(5)(a), the County has until 2023 to update its code to be in compliance with the new law.