# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILLIAM S. THORN and DARLENE A. THORN, husband and wife and the marital community comprised thereof,<br><br>    Respondents,<br><br>  v.<br><br>SUNSET CHEVROLET, INC., a Washington corporation, also known as SUNSET RV OF FIFE, also known as SUNSET'S WHITE RIVER RV; PHILIP MITCHELL and JANE DOE MITCHELL, husband and wife, and their marital community comprised thereof; FOREST RIVER, INC., a foreign corporation,<br><br>    Appellants. | No. 53739-7-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — William and Darlene Thorn bought a recreational vehicle (RV) from Sunset Chevrolet that was manufactured by Forest River, Inc. The Thorns claim that the RV was sold as new, after Forest River notified Sunset Chevrolet that it was cancelling its warranty because the RV had been on the lot for too long. Sunset Chevrolet did not inform the Thorns that the warranty had been cancelled and sold the RV as new. When the RV developed problems, Forest River refused to pay for repairs because it had cancelled its warranty.

The Thorns argue that Forest River was required to provide a manufacturer's one-year/12,000 mile express warranty at sale as required under Washington's Lemon Law, chapter 19.118 RCW, and that Forest River wrongfully cancelled the warranty. The Thorns sued Forest

River for unfair and deceptive practices under the Consumer Protection Act (CPA), chapter 19.86 RCW.[1] A jury found that Forest River did not violate the CPA. The Thorns moved for a new trial under CR 59(f) based on the trial court's failure to give three jury instructions related to the warranty. The trial court determined that its failure to give the instructions was erroneous and granted the motion for a new trial, overturning the jury's verdict. Forest River appeals.

Forest River argues that the trial court failed to give reasons in law and fact for its ruling as required under CR 59(f). Forest River argues that the trial court properly declined to give the proposed warranty jury instructions and erred in granting a new trial because Washington's Lemon Law does not mandate that manufacturers provide a one-year/12,000 mile warranty; it only extends the warranty, when provided, to one-year/12,000 miles when the actual warranty is less in duration. Therefore, Forest River lawfully cancelled the warranty before the sale of the RV to the Thorns and it was not required to provide a warranty to the Thorns.

We hold that the trial court gave definite reasons in law and fact for the order granting a new trial, and thus, it complied with CR 59(f). However, we also hold that the law did not require Forest River to provide an express warranty, it lawfully cancelled the warranty before the sale, and the proposed jury instructions misstated the law. Thus, the Thorns were not entitled to the proposed instructions, the court did not err by declining to give these instructions, but the court erred by granting the motion for a new trial based on its erroneous ruling that it did err by declining to give the proposed instructions. Accordingly, we reverse the trial court's order granting a new trial and we remand for entry of judgment upon the verdict.

---

[1] The Thorns also sued Sunset Chevrolet, but settled those claims before trial.

FACTS

I. BACKGROUND

A. FOREST RIVER AND SUNSET CHEVROLET

Forest River is a final stage manufacturer and distributer of RVs. It purchases RV components from hundreds of vendors and assembles them into motor homes and travel trailers. Forest River typically provides a one-year/12,000 mile manufacturer's warranty on all new RVs, primarily covering the living room portion of the RV. This type of warranty is common in the RV industry. The other vendors for each RV component separately provide warranties independent of any warranty provided by Forest River. Consumers wanting additional protection often purchase service plans from a third-party provider.

Forest River presumes that all of its RVs that have not been sold within two years by the dealership to be "presumptively defective." 4 Verbatim Report of Proceedings (VRP) at 596. As a result, for RVs not sold within two years, Forest River has a "warranty cancellation policy" that eliminates its costs regarding claim disputes and repairs when it determines that the warranty claim is attributable to "lot rot" rather than a defect in the product it delivered.[2] 6 VRP at 880, 979-80.

A third-party dealer, Sunset Chevrolet, purchased the new Berkshire XL RV from Forest River in 2014. The Berkshire remained unsold on Sunset Chevrolet's lot for more than two years. On June 8, 2016, Forest River sent a letter to Sunset Chevrolet stating that it would "no longer participate in a warranty repair nor offer a warranty" due to the passage of time which made it

---

[2] "Lot rot" describes defects that can arise in unsold vehicles due to exposure to the elements, extended periods of non-use, poor maintenance, and general degradation of materials. 6 VRP at 980.

difficult to distinguish a manufacturing defect from a routine maintenance defect. Clerk's Papers (CP at 37). In consideration for Sunset's agreement to sell the RV "used, as-is" Forest River included a $1,500.00 check, which Sunset cashed. CP at 37. The agreement with Sunset Chevrolet did not alter the other warranties provided by other component manufacturers of the RV, such as the warranty that applied to the chassis.

## B. THE THORNS PURCHASE OF THE BERKSHIRE

On March 31, 2017, the Thorns purchased the Berkshire from Sunset Chevrolet. Sunset Chevrolet advertised and sold the Berkshire as a new RV.

Sunset Chevrolet assured the Thorns that the Berkshire was fully covered by a Forest River manufacturer's express warranty. On the day of delivery, the Thorns signed a manufacturer's warranty registration form provided by Sunset Chevrolet. Per its practice, after the sale, Sunset Chevrolet tried to register the Berkshire in Forest River's computerized warranty program, but was unable to do so because Forest River had entered "NO FACTORY WARRANTY" under "owner's name" on the registration form. Exhibits 15, 23. Sunset Chevrolet did not tell the Thorns about this for four months. Sunset Chevrolet also did not inform Forest River that it had sold the RV to the Thorns or that it had assured the Thorns that there was a manufacturer's warranty on their RV.

The Thorns discovered a number of problems with the RV shortly after they purchased it. These problems included "a defective step tread, torn fabric on the coach door, a defective propane tank float gage, and a defective slide tray in the 'basement' of the RV." CP at 12. They dropped the RV off for repairs and picked it up upon completion. Sunset Chevrolet did warranty repairs on the Berkshire without charge as it would ordinarily do for a new RV under warranty. The Thorns then discovered additional defects, including a generator that did not work, a global

positioning system that did not work, slides that would not fully extend, and batteries that would not take a charge. Again, the Thorns returned the RV for repairs which were made.

In August 2017, Sunset Chevrolet first notified the Thorns that the RV was not covered by a Forest River manufacturer's express warranty, and thus, they would be charged for all of the additional repairs. The Thorns declined to pay for the repairs and left the RV at the dealership.

## II. PROCEDURAL HISTORY

### A. THE CPA ACTION

The Thorns filed suit against Sunset Chevrolet and Forest River, alleging CPA violations. The Thorns settled with Sunset Chevrolet before trial. The case against Forest River proceeded to trial.

### B. TRIAL

#### 1. Testimony

At trial, the Thorns argued that Forest River violated the CPA by entering into an agreement with Sunset Chevrolet to sell the Berkshire without a Forest River warranty, asserting that Washington's Lemon Law requires a one-year/12,000 mile express warranty be given for any new RV.

William, Darlene, Ben, and Barbara Thorn and an expert witness, Douglas Walsh, testified. The Thorns testified that they would not have purchased the RV if they had known that Forest River had cancelled the warranty, nor would they have purchased the RV if Sunset had sold the vehicle used, as-is.

Forest River's corporate representative, Dan Evans, testified that RV dealerships may add wear and tear to RVs by using them as "demonstrator" RVs. He testified that Sunset Chevrolet

5

drove the Berkshire a high number of miles, 872 miles, before selling it to the Thorns, and Forest River's policy only allows up to 500 miles, suggesting that the Berkshire that the Thorns purchased may have been used as a "demonstrator." RP at 953.

    2. Jury Instructions

The Thorns proposed three jury instructions[3] to support their argument that Forest River, as the final stage manufacturer, was required to provide a one-year/12,000 mile warranty on the Berkshire.

Proposed instruction number 35 stated in part,

> A manufacturer's written warranty shall be at least one year after the date of the original delivery to the consumer of the vehicle or the first twelve thousand miles of operation, whichever occurs first.

CP at 279 (citing RCW 19.118.031(3), RCW 19.118.120).

Proposed instruction number 47 stated:

> A Washington statute provides that: A manufacturer's written warranty must be at least one year after the date of the original delivery to the consumer of the vehicle or the first twelve thousand miles of operation, whichever occurs first.

CP at 29l (citing RCW 19.118.041).

Proposed instruction number 64 stated:

> The manufacturer's written warranty shall be at least one year after the date of the original delivery to the consumer of the vehicle or the first twelve thousand miles of operation, whichever occurs first.

CP at 435 (citing RCW 19.118.031(3), RCW 19.118.041(2)).

The trial court declined to give any of these proposed instructions.

---

[3] Proposed jury instruction numbers 35, 47, and 64.

Based on the Uniform Commercial Code's (UCC) limitation on the exclusion of express warranties, the Thorns also proposed instruction number 43 which stated:

> A Washington statute provides: Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed whenever reasonable as consistent with each other; but negation or limitation is inoperative to the extent that such construction is unreasonable.

CP at 287 (citing RCW 62A.2-316(1)). The trial court also declined to give instruction number 43 because it was confusing.

Defense counsel argued in closing:

> Now, one thing you didn't hear in the jury instructions was an instruction stating that the law requires all vehicles like this to be warranted for a minimum of one year and 15,000 (sic) miles or anything like that. It's because there is no law that states that. And if there was, it would be in the jury instructions.

9 VRP at 1389. This argument violated the trial court's ruling prohibiting Forest River from arguing that no law requires a manufacturer to provide a new motor vehicle warranty. Outside the presence of the jury, counsel argued over whether defense counsel's argument was improper. The court ruled that Forest River's counsel's argument was improper and instructed the jury to disregard it stating:

> During closing, the defense commented that Washington law does not require all new motor vehicles to be sold with a manufacturer's warranty. This statement by counsel was improper and you are instructed to disregard it.

10 VRP at 1433; CP at 474.

The Thorns reiterated their request for proposed instruction number 64 after Forest River's closing argument, asserting that it was necessary to correct Forest River's statement that the law does not require a manufacturer's warranty on new vehicles. The trial court said that it was

7

"struggling" with whether to offer proposed instruction number 64 and it needed to consider it overnight. 9 VRP at 1407. Ultimately, the trial court declined to give it, explaining:

> So when I kept thinking about this issue -- when I really got down to the bottom line of this case, I thought; should I be giving [i]nstruction [n]umber 64? In my mind, I cannot do that. And the reason I could not do that is that that would be a direct comment on what [defense counsel] said in closing argument and in essence saying to the jury, he was wrong. And I think that that would unduly prejudice the defense case.
>
> . . . .
>
> So I'm going to allow this case to go to the jury. I'm going to allow them to deliberate to a verdict if that's possible. And if the case is a defense verdict by the jury saying either there was no violation of the Consumer Protection Act or there was no proximate cause, I would consider a motion posttrial for a new trial based on this circumstance.

10 VRP at 1423-24. The Thorns objected to the court's ruling.

3. Jury Verdict

During deliberations, the jury asked, "Is Forest River required to provide a warranty to the first titled owner for new vehicles regardless of [the] age of [the] vehicle under Washington law?" CP at 445. The court's response to the jury stated, "Please refer to your notes and jury instructions." CP at 445.

The jury returned a verdict in favor of Forest River.

4. Motion for a New Trial

Following the verdict, the Thorns filed a motion for a new trial under CR 59(f) or alternatively, for a judgment on liability notwithstanding the verdict. They argued that the trial court's failure to instruct the jury as proposed in jury instructions 35, 43, and 64 prevented them from arguing to the jury that Forest River violated state law with its warranty cancellation policy,

and its attempt to negate or limit its warranties on an RV already sold to a dealer, here Sunset Chevrolet. The trial court clarified that the Thorns were making this motion due to

> [An] error that I committed, not because of any error or misconduct or anything of the jury. But the point is that the [c]ourt should have either determined as a matter of law that there was liability or on some kind of directed verdict or summary judgment or something else, but as a matter of law; or given those instructions on the UCC.

12 VRP at 1467. The court reiterated that it had erred and further explained that:

> [T]his is where I was most troubled on the legal analysis of whether or not the [c]ourt should have done something different, either -- even when the defense brought the halftime motion and for directed verdict; even when plaintiff brought summary judgment, not timely, for the first day of trial; even when the [c]ourt had before it each of these various instructions that the [c]ourt declined to give and tried to simplify it; I've been troubled by it, I have been. I've second guessed myself quite a bit since this jury verdict came.

12 VRP at 1468.

The trial court entered an order granting the motion for a new trial and denying without prejudice the motion for judgment notwithstanding the verdict.

Forest River appeals the trial court's order granting the Thorn's motion for a new trial and reversing the jury's verdict in Forest River's favor.

## ANALYSIS

### I. STANDARDS OF REVIEW

CR 59(a)(8) states that a trial court may vacate a verdict and grant a new trial upon motion when an error in law occurred at the trial and the error was "objected to at the time by the party making the application." "[W]hen an error of law is cited as grounds for a new trial under CR 59(a)(8), we review the alleged error of law de novo." *M.R.B. v. Puyallup Sch. Dist.*, 169 Wn. App. 837, 848, 282 P.3d 1124 (2012). "The error of law complained of must be prejudicial."

*M.R.B.*, 169 Wn. App. at 848. "We review a trial court's denial of a new trial more critically than we do its grant of a new trial because a new trial places the parties where they were before, but a decision denying a new trial concludes their rights." *M.R.B.*, 169 Wn. App. at 848.

We review a trial court's grant of a new trial for failure to give a jury instruction for an abuse of discretion, unless that grant is based on an error of law. *Teter v. Deck*, 174 Wn.2d 207, 215, 274 P.3d 336 (2012). "Whether to give a particular instruction to the jury is a matter within the discretion of the trial court." *Stiley v. Block*, 130 Wn.2d 486, 498, 925 P.2d 194 (1996).

"[A] trial court's refusal to give a requested instruction is reviewed only for abuse of discretion." *Stiley*, 130 Wn.2d at 498. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Teter*, 174 Wn.2d at 215. The court abuses its discretion in refusing to give a jury instruction when it adopts a position that no reasonable person would take. *Hickok-Knight v. Wal-Mart Stores, Inc.*, 170 Wn. App. 279, 322, 284 P.3d 749 (2012).

## II. PROPOSED JURY INSTRUCTIONS

Forest River argues that the trial court erred by granting a new trial after it wrongly concluded that the Lemon Law requires final stage manufacturers, such as Forest River, to provide a one-year/12,000 mile express warranty for *all* new motor vehicles already sold to a third-party dealer.[4] Forest River argues that RCW 19.118.031(3) creates a minimum time period for consumers to report vehicle defects and obtain warranty repairs when a manufacturer *actually*

---

[4] Forest River initially argues that the trial court's order should be reversed because it failed to state definite reasons of law and fact as required by CR 59(f). We hold that the court's order and oral ruling articulated its reasons in law and fact and the order complies with CR 59(f).

provides a valid express warranty, and this statute extends the warranty for this period. Forest River emphasizes it did not make a warranty to the Thorns at the sale and it lawfully withdrew the warranty prior to the sale. Thus, Forest River argues this statute does not apply here and the Thorns were not entitled to proposed jury instruction number 64. Forest River makes the same argument with respect to RCW 19.118.041(3), which also provides for a warranty extension period for repairs. We agree with this interpretation and hold that the Thorns were not entitled to proposed instruction number 64 because it misstated the law regarding warranties.

We review jury instructions de novo. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012). In general, "[j]ury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996). "Each party is entitled to have the trial court instruct on its theory of the case." *Meredith v. Hanson*, 40 Wn. App. 170, 174, 697 P.2d 602 (1985).

The Lemon Law, as remedial legislation, is to be interpreted broadly. *Chrysler Motors Corp. v. Flowers*, 116 Wn.2d 208, 214, 803 P.2d 314 (1991). "Shall," when used in a statute, "is presumptively imperative and operates to create a duty, rather than to confer discretion." *In re Parental Rights to K.J.B.*, 187 Wn.2d 592, 601, 387 P.3d 1072 (2017). "[A]pparently conflicting statutes must be reconciled to give effect to each of them." *Tunstall ex rel. Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000).

A. PROPOSED INSTRUCTION NUMBER 64

RCW 19.118.031(3) provides a manufacturer's obligation to make repairs to conform a new vehicle to the required manufacturer's warranty:

> *For the purposes of this chapter*, if a new motor vehicle does not conform to the warranty and the consumer reports the nonconformity during the term of the eligibility period or the period of coverage of the applicable manufacturer's written warranty, whichever is less, to the manufacturer, its agent, or the new motor vehicle dealer who sold the new motor vehicle, the manufacturer, its agent, or the new motor vehicle dealer shall make repairs as are necessary to conform the vehicle to the warranty, regardless of whether such repairs are made after the expiration of the eligibility period. Any corrections or attempted repairs undertaken by a new motor vehicle dealer under this chapter shall be treated as warranty work and billed by the dealer to the manufacturer in the same manner as other work under the manufacturer's written warranty is billed. *For purposes of this subsection*, the manufacturer's written warranty shall be at least one year after the date of the original delivery to the consumer of the vehicle or the first twelve thousand miles of operation, whichever occurs first.

(Emphasis added.)

RCW 19.118.041(3)(a) provides for the same warranty extension for repairs and states in relevant part:

> *For purposes of this subsection* each motor home manufacturer's written warranty must be at least one year after the date of the original delivery to the consumer of the vehicle or the first twelve thousand miles of operation, whichever occurs first.

(Emphasis added.) These statutes apply only when an express warranty has been made, which did not happen in this case.

We must construe the plain language of RCW 19.118.031(3) and RCW 19.118.041(3)(a) together with RCW 19.118.010, which states in relevant part, "Every manufacturer of motor vehicles sold in this state *and for which the manufacturer has made an express warranty* shall maintain in this state sufficient service and repair facilities." (Emphasis added.) RCW 19.118.010 also refers to express warranties that are mandated elsewhere in the chapter. *See* RCW 19.118.031(3), RCW 19.118.041(3)(a).

Reading these related statutory provisions together, the language "and for which the manufacturer has made an express warranty" refers not to all new motor vehicles but only to all vehicles for which express warranties (mandated elsewhere in the chapter) have been made. RCW 19.118.010. In other words, these statutes extend the manufacturer's warranty *when provided* to a one-year/12,000 mile period during which the consumer must report any nonconformity, and if reported, the manufacturer must timely repair the vehicle even if the warranty is due to expire.

Here, Forest River did not make an express warranty at the time of the sale; it had lawfully withdrawn the warranty prior to the sale of the Berkshire to the Thorns. We agree with Forest River that neither RCW 19.118.031(3) nor RCW 19.118.041(3)(a) required an express warranty. Therefore, the Thorns were not entitled to proposed instruction number 64. The trial court correctly declined to give this instruction but did err by granting a new trial on the basis that these statutes required an express warranty be given by Forest River.

B. PROPOSED INSTRUCTION NUMBER 43

Forest River argues that the UCC provisions of RCW 62A.2-316 do not apply because it did not provide an express warranty, and thus, the Thorns were not entitled to proposed instruction number 43 and the trial court correctly declined to give this instruction and did not err. We agree.

RCW 62A.2-316(1) states,

Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (RCW 62A.2-202) *negation or limitation is inoperative to the extent that such construction is unreasonable*.

(Emphasis added.)

13

The Thorns argue that they were entitled to proposed instruction number 43 because it supported their theory of the case that Forest River's warranty cancellation policy violated the Lemon Law, which they claim is a per se violation of the CPA. But this argument assumes wrongly that Forest River was required to and did provide an express warranty at the sale. As discussed above, Forest River was entitled to cancel its warranty before the sale to the Thorns. Under the plain language of RCW 62A.2-316(1), the statute only applies *when* an express warranty is provided. We hold that RCW 62A.2-316 does not apply, the Thorns were not entitled to proposed instruction number 43, and thus, the court correctly declined to give this instruction.

C. TRIAL COURT'S ERROR

As we mentioned above, we review a trial court's grant of a new trial for failure to give a jury instruction for an abuse of discretion, unless that grant is based on an error of law. *Teter*, 174 Wn.2d at 215. "Whether to give a particular instruction to the jury is a matter within the discretion of the trial court." *Stiley*, 130 Wn.2d at 498.

Here, the trial court granted the Thorns a new trial based on what it thought to be its own legal error. The court's interpretation of the law was erroneous and, in turn, its grant of a new trial was erroneous. Thus, the trial court did not err by declining to give the Thorns' requested jury instructions, but the court did err by granting a new trial.

## ATTORNEY FEES

The Thorns request an award of reasonable appellate attorney fees under RCW 19.86.090. Br. of Resp. at 49. RCW 19.86.090 provides for an award of reasonable attorney fees to a person injured by a violation of the CPA who brings a civil action to recover his or her damages. Because the Thorns do not prevail on appeal, we do not award them appellate attorney fees.

No. 53739-7-II

CONCLUSION

We hold that the trial court gave definite reasons in law and fact for the order granting a new trial, and thus, it complied with CR 59(f). However, we also hold that the law did not require Forest River to provide an express warranty, it lawfully cancelled the warranty before the sale, and the proposed jury instructions misstated the law. Thus, the Thorns were not entitled to the proposed instructions, the court did not err by declining to give these instructions, but the court erred by granting the motion for a new trial based on its erroneous ruling that it did err by declining to give the proposed instructions. Accordingly, we reverse the trial court's order granting a new trial and we remand for entry of judgment upon the verdict.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

GLASGOW, A.C.J.

MAXA, J.

15